UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| VRINGO, INC.<br><br>Plaintiff,<br><br>v.<br><br>ZTE CORPORATION, and<br>ZTE USA Inc.,<br><br>Defendants | Civil Action No. |

## COMPLAINT FOR BREACH OF CONTRACT

Plaintiff Vringo, Inc. ("Vringo") files this complaint against ZTE Corporation ("ZTE Corp.") and ZTE USA Inc. ("ZTE USA") (collectively, "ZTE") for breach of a Non-Disclosure Agreement dated December 6, 2013 between Vringo and ZTE (the "NDA") and hereby alleges as follows:

### I. THE PARTIES

1. Plaintiff Vringo, Inc. is a corporation organized under the laws of Delaware having its principal place of business at 780 Third Avenue, 15th Floor, New York, New York 10017.

2. Defendant ZTE Corp. is a corporation organized under the laws of China, having its principal place of business in Shenzhen, China.

3. Defendant ZTE USA is a corporation organized under the laws of New Jersey with its principal place of business at 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.

## II. NATURE OF THE ACTION

4. This is a civil action for breach of contract.

## III. BACKGROUND

5. On December 6, 2013, in order to facilitate settlement discussions related to world-wide patent infringement litigation brought by Vringo against ZTE, Vringo and ZTE entered into the NDA.

6. The NDA places strict restrictions on the use of confidential settlement information exchanged between the parties:

> [A]ny and all statements made, positions taken, or documents used in or exchanged by either Party during the course of the Discussions ("Confidential Information") shall be confidential, inadmissible, and without prejudice and **shall not be used or referenced in any way by any Party in any** existing or **future judicial** or arbitration **proceedings** . . . .

(Exhibit A, para. 2) (emphasis added).

7. On December 10, 2013, Vringo met with ZTE. At that meeting and in reliance on the NDA, Vringo provided a presentation to ZTE which included Vringo's opening settlement offer.

8. Each and every page of Vringo's presentation was clearly designated "**CONFIDENTIAL – VRINGO/ZTE SETTLEMENT DISCUSSIONS SUBJECT TO NDA.**"

9. On February 21, 2014, ZTE filed an antitrust complaint against Vringo (the "Chinese Complaint") in its home jurisdiction in China, i.e., the Shenzhen Intermediate People's Court (the "Shenzhen Court").

10.     In violation of the NDA, ZTE included Vringo's **entire presentation** as an exhibit to the Chinese Complaint. ZTE also included the **amount** of Vringo's settlement offer in the Chinese Complaint.

11.     Vringo did not become aware of the Chinese Complaint until it received a copy of the Chinese Complaint on June 26, 2014.

12.     ZTE is using Vringo's presentation and settlement offer to provide the **basis for ZTE's antitrust allegations** in the Chinese Complaint.

13.     Vringo seeks to enforce its contract rights in the NDA by obtaining a temporary restraining order to mitigate the harm that Vringo has already suffered. Vringo also seeks a preliminary and permanent injunction against ZTE.

### IV.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs, and is between citizens of different States. Vringo is a citizen of New York, and the ZTE entities are citizens of Texas and China.

15.     Upon information and belief, ZTE conducts business in New York and sells products within this judicial district. ZTE has submitted to the jurisdiction of the United States District Court for the Southern District of New York. The United States District Court for the Southern District of New York Court has personal jurisdiction over ZTE by virtue of the above-referenced facts.

16. ZTE has expressly consented to the jurisdiction of the United States District Court for the Southern District of New York Court for disputes arising out of or in connection with the NDA.

17. The NDA between Vringo and ZTE specifically provides that the "courts of the State of New York located in New York County or the United States Federal Courts located in New York County, New York shall have exclusive jurisdiction to hear and decide any suit, action or proceedings, and to settle any disputes, which may arise out of or in connection with this Agreement and, for these purposes, the Parties irrevocably submit to the jurisdiction of said courts and agree not to object to the jurisdiction of such courts." (Exhibit A, para. 13). This Court has personal jurisdiction over ZTE by virtue of the above-referenced facts.

## V.   THE DISPUTES BETWEEN VRINGO AND ZTE

18. Vringo, which is publicly traded on NASDAQ, is engaged in the innovation, development and monetization of intellectual property and mobile technologies. Vringo's intellectual property portfolio consists of more than 600 patents and patent applications covering a variety of technologies related to Internet search, mobile handsets, telecommunications infrastructure, and wireless communications.

19. A number of Vringo's patents were purchased from Nokia Corporation and are essential to 2G, 3G, and 4G telecommunication standards – the Global System for Mobile Communications ("GSM") Standard (2G technology), the Universal Mobile Telecommunications System ("UMTS") Standard (3G technology), and Long Term Evolution ("LTE") (4G technology). Since these patents are essential to the GSM, UMTS, and LTE Standards, Vringo has undertaken – in accordance with the applicable rules of the

applicable standard setting organization – to grant licenses under each of these patents on fair, reasonable, and nondiscriminatory ("FRAND") terms and conditions.

20.     ZTE Corp., which is publicly traded on the Shenzhen and Hong Kong stock exchanges, manufactures, distributes, and sells telecommunications products such as infrastructure equipment andsmartphones throughout the world through its subsidiaries.

21.     For years, ZTE has been selling GSM, UMTS and/or LTE compliant telecommunications equipment throughout the world that is covered by Vringo's standard essential patents ("SEPs").  ZTE has done so without a license.

22.     As a result, since 2012, Vringo has brought patent infringement lawsuits against ZTE and its subsidiaries, including in Australia, Brazil, France, Germany, India, Netherlands, Spain, and the United Kingdom.  Within the past two weeks, Vringo has also brought patent infringement lawsuits against ZTE and its subsidiaries in Malaysia and Romania.

## VI.    MEETING BETWEEN VRINGO AND ZTE

23.     ZTE and Vringo agreed to meet in December 2013 to discuss possible settlement.

24.     On December 6, 2013, in order to engage in productive discussions, Vringo and ZTE entered into the NDA (Exhibit A) so that the parties could freely exchange information.

25.     The NDA states, in relevant part:

> The Parties are currently engaged in litigation in several different jurisdictions.  The parties wish to enter into discussions to explore a potential settlement of some portion of or all of the outstanding litigation as well as any other disputes between the Parties (the "Discussions").

(*Id.*, para 1.)

> [A]ny and all statements made, positions taken, or documents used in or exchanged by either Party during the course of the Discussions ("Confidential Information") shall be confidential, inadmissible, and without prejudice and **shall not be used or referenced in any way by any Party in any** existing or **future judicial** or arbitration **proceedings** . . . .

(*Id.*, para 2.) (emphasis added.)

26.     The NDA also provides that it shall be "governed by and construed and enforced in accordance with the laws of the State of New York" and that it **"shall be binding upon the parties hereto in the United States and worldwide."** (*Id.*, para 12.) (emphasis added.)

27.     Pursuant to the NDA, the parties also agreed that they would be "entitled to seek equitable relief, including injunction and specific performance, for any actual or threatened breach of the provisions of this Agreement, in each case, without the necessity of posting bond or other security or proving actual damages." (*Id.*, para 10.)

28. The parties met on December 10, 2013. During that meeting and in reliance on the NDA, Vringo presented its positions, including Vringo's opening settlement offer, to ZTE in a 40-page presentation (the "Confidential Presentation"). Each and every page of the Confidential Presentation was clearly marked:

**CONFIDENTIAL - VRINGO/ZTE SETTLEMENT DISCUSSIONS SUBJECT TO NDA**

The cover page of the Confidential Presentation is attached hereto as Exhibit B.

### VII.    ZTE'S BREACH OF THE NDA

29.     Just nine weeks after the December meeting, on February 21, 2014, ZTE filed the Chinese Complaint in which ZTE relied on the Confidential Presentation and the substance of the meeting as the basis for its antitrust allegations against Vringo.

30.     Section IV of the Chinese Complaint sets forth ZTE's allegations that Vringo abused its market position by not offering a license on FRAND terms and conditions. In order to demonstrate Vringo's purported abuse of position by allegedly demanding high FRAND prices, ZTE relied on the proposed settlement that Vringo offered to ZTE which was subject to the NDA.

31.     Specifically, in the Chinese Complaint ZTE states that: "In the second price quotation in December 2013, the Defendant [Vringo] actually intended to charge the Plaintiff USD **[REDACTED]** for its standard-essential patents portfolio license . . . ." (See Exhibit C at 6-7).[1] For the purpose of this Complaint, Vringo has redacted the offer from the above quote.

32.     ZTE's inclusion of the Confidential Presentation[2] and Vringo's settlement offer in the Chinese Complaint (collectively, the "NDA Material") is in direct violation of the NDA which states that such information "shall not be used or referenced in any way by any Party in any . . . judicial . . . proceedings." (Exhibit A, para. 2).

33.     Worst yet, because of Chinese Civil Procedure rules, ZTE provided Vringo's NDA Material to the Shenzhen Court *ex parte* on February 21, 2014, and Vringo only learned of ZTE's breach on June 26, 2014, after multiple judges in the Shenzhen Court and possibly the Guangdong Higher People's Court ("Guangdong Appellate Court") (the appellate court for all intellectual property cases filed in the Guangdong Province) have had access to, and carefully considered, the material for more than four months.

---

[1] Exhibit C is an English-language translation of the relevant pages of the Chinese Complaint as received from the Shenzhen Court. Vringo made all the redactions in Exhibit C.

[2] The Chinese Complaint was accompanied by an "Evidence List" (attached as Exhibit D hereto) and fourteen exhibits. Vringo's Confidential Presentation is exhibit number eight on that list, which is described as "the second offer from defendant to plaintiff and its translation", with an alleged "purpose of evidence" that "the defendants abuse its [sic] dominant market positions." In fact, the document attached to this Complaint as Exhibit B is the cover page from the actual version of the Confidential Presentation that was submitted to the Shenzhen Court as exhibit eight to the Chinese Complaint.

## VIII. TAINTING OF THE SHENZEN COURT AND THE GUANGDONG APPELLATE COURT AND RISK OF PUBLIC DISCLOSURE OF VRINGO'S NDA MATERIAL

34. As is set forth in the Declaration of Douglas Clark[3] filed in support of Vringo's accompanying Motion for Temporary Restraining Order (the "Clark Decl."), the procedure for filing a complaint in the court of the Mainland of the People's Republic of China is that the plaintiff first files its case with the Acceptance Chamber of the relevant Chinese court. *Id.*, ¶ 4. One or more judges in the Acceptance Chamber will review the complaint to confirm not only that it complies with formality requirements, but also that the court has, at least, prima facie jurisdiction and that there are sufficient facts to support the complaint. *Id.* Once the complaint is accepted, the court will assign the case to a panel of judges and pass the complaint to these judges. (*Id.*, ¶ 5.)

35. The Acceptance Chamber may also consult with the President of the Court or other judges in important cases. (*Id.*, ¶ 4.) The case ZTE has brought against Vringo in the Shenzhen Court involving these intellectual property issues and the international application of China's Anti-Monopoly Law would be considered an important case and it is likely that a number of judges in that court, and possibly in the Guangdong Appellate Court, reviewed the complaint and accompanying exhibits as part of the Acceptance Chamber review. (*Id.*)

36. In this instance, the Acceptance Chamber at the Shenzhen Court analyzed ZTE's evidence, including the material submitted in breach of the NDA, *for nearly two months*, before determining that it would accept the case on April 14, 2014. (Attached as Exhibit E hereto.) At no time while the Acceptance Chamber (and any number of unidentified judges in the Shenzhen Court and the Guangdong Appellate Court) was

---

[3] Douglas Clark is a Hong Kong lawyer admitted to practice law in China.

analyzing the material submitted in breach of the NDA did ZTE inform Vringo that the NDA Material was under consideration by a foreign court.

37.     The Chinese government also recently announced that early next year, an Intellectual Property Court for Guangdong Province will be created.  Judges from the current Intellectual Property Chambers of courts in the province are likely to be assigned to that new court.  If the case that ZTE has filed against Vringo is not dismissed – or if ZTE files a similar case in the next year – we expect that the case will be transferred to that new court, and assigned to judges who are likely to have reviewed and considered the NDA Material.

38.     In addition, even though the Shenzhen Court accepted the case on April 14, 2014, and assigned it to the Intellectual Property Chamber of the Shenzhen Intermediate People's Court, ZTE continued to delay informing Vringo of ZTE's breach of the NDA.  It was not until the Shenzhen Court attempted to serve Vringo with process by mailing a copy of the Chinese Complaint and supporting papers to Vringo's New York office (which Vringo received through the United States Postal Service on June 26, 2014) that Vringo became aware that (a) the Chinese Complaint existed; (b) that ZTE had breached the NDA; (c) that the Chinese Complaint relied heavily on Vringo's confidential information conveyed to ZTE pursuant to the NDA; and (d) that the Shenzhen Court and Guangdong Appellate Court had been considering the NDA Material for four months.

39.     Also, in the Chinese legal system, lawyers who are not involved in a particular case have nevertheless generally been able to access court files to obtain documents that have been filed in that case. (Clark Decl. para 8.)  While this has become

less common in recent years, it is possible that other individuals uninvolved in the case could access the court file containing the material filed in the Shenzhen Court. (*Id.*)

40. Moreover, the Shenzhen Court has scheduled a first hearing of the case brought by ZTE to take place on August 14, 2014 dedicated to exchanging evidence. (*Id.*, para. 7.) In this hearing, which will be **open to the public**, ZTE will be required to discuss and explain the relevance of the Confidential Presentation. (*Id.*)

41. The Shenzhen Court has also scheduled a substantive hearing to take place on the next day, August 15, 2014. (*Id.*) This hearing will also be **open to the public** and also presents a high risk of public disclosure of the Confidential Presentation or other confidential information subject to the NDA.(*Id.*)

## IX.  IRREPARABLE HARM TO VRINGO

42. ZTE willfully and intentionally misused the NDA Material in violation of the NDA. ZTE hid its violation of the NDA from Vringo for months while the Shenzhen Court considered the Chinese Complaint.

43. Vringo cannot unring the bell. An unknown number of judges in the Shenzhen Court and Guangdong Appellate Court have been exposed to Vringo's confidential settlement information.

44. Vringo bargained for and obtained the NDA so that it could provide a highly confidential settlement offer for Vringo's entire portfolio of SEPs. The material that it provided to ZTE pursuant to the NDA was a good-faith attempt to settle multiple litigations throughout the world.

45. Unless ZTE is swiftly required to take action to withdraw its Chinese Complaint, to remove Vringo's NDA Material, and to cancel the hearings scheduled for August 14 and 15, the harm to Vringo will become significantly greater. Vringo's

economic worth as an enterprise is intrinsically linked to the value of its patent portfolio, and ZTE is seeking to harm Vringo by making Vringo's litigation settlement proposal public, providing Vringo's bottom-line number to every other third party that might in the future negotiate with Vringo for a license to its patent portfolio.

46. Because ZTE concealed from Vringo for four and one half months that it was using the Confidential Presentation and other NDA Material while multiple judges in the Shenzhen Court (and potentially the Guangdong Appellate Court) reviewed, analyzed and discussed that material before deciding that the Chinese Complaint adequately stated a claim, the Shenzhen Court and Guangdong Appellate Court have been irretrievably tainted by ZTE's wrongful acts. ZTE should therefore be enjoined from filing any new litigation in the Shenzhen Court or any other court in the Guangdong Province (an appeal from which will be heard by the Guangdong Appellate Court) regarding any same or similar claims involving Vringo and licensing negotiations or patent enforcement.

47. ZTE is also simultaneously asserting similar antitrust arguments at least in the European Union and, upon information and belief, potentially in other jurisdictions.. Upon information and belief, ZTE has not yet tainted courts those jurisdictions by disclosing the NDA Material to that tribunal. Based on ZTE's actions in China, Vringo has good reason to be concerned that ZTE will disclose NDA Material, unless this Court swiftly enjoins ZTE from further breaches. If, in fact, ZTE has secretly provided the NDA Material to any other court or tribunal worldwide, it must be ordered to immediately (1) withdraw all of that NDA Material and (2) inform Vringo of the circumstances in which it had provided that NDA Material to that court or tribunal, so that Vringo can determine the extent to which that other court or tribunal has been tainted by the disclosure.

### X. FIRST CAUSE OF ACTION: BREACH OF CONTRACT AS AGAINST VRINGO

48. Vringo repeats and reiterates the allegations contained within Paragraphs 1 through 47 above as if set forth fully herein.

49. ZTE and Vringo entered into the NDA.

50. Vringo has at all times complied with its responsibilities and requirements under the NDA.

51. By willfully and intentionally basing a new antitrust complaint in large part on materials submitted pursuant to the NDA, ZTE is in breach of the NDA.

52. ZTE's breach of the NDA has and will cause irreparable harm to Vringo, including by irreversibly tainting the Shenzhen Court before which ZTE has sought millions of dollars in damages and the Guangdong Appellate Court. More importantly, ZTE has sought to have Vringo declared a monopolist, to harm Vringo's patent infringement actions where Vringo believes ZTE's liability for past and future use is in the hundreds of millions of dollars, and ZTE's blatant breach threatens to disclose Vringo's negotiating positions to other technology companies with whom Vringo may eventually seek to license the technology. Vringo's enterprise value islinked to the value of its patents, and the result of any of these actions would be harmful to Vringo and beyond compensable in monetary terms.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Vringo prays for judgment as follows:

a. That ZTE has breached the NDA, causing harm to Vringo;

b. That ZTE, its subsidiaries, officers, agents, servants and employees and those persons in active concert or participation with any of them, be ordered

          to withdraw the Chinese Complaint, remove the Chinese Complaint and all of its supporting documentation immediately, and to ensure that there is no public hearing to discuss the Chinese Complaint;

c.     That ZTE, its subsidiaries, officers, agents, servants and employees and those persons in active concert or participation with any of them, are temporarily restrained and preliminarily and permanently enjoined from pursuing any further litigation in the Shenzhen Court or any other court in the Guangdong Province regarding any same or similar claims involving Vringo and licensing negotiations or patent enforcement;

d.     That ZTE, its subsidiaries, officers, agents, servants and employees and those persons in active concert or participation with any of them, be ordered to withdraw any NDA Material that it may have provided to any other court and tribunal and provide notice to Vringo of any circumstances in which it has provided that NDA Material to that court or tribunal.

e.     That ZTE, its subsidiaries, officers, agents, servants and employees and those persons in active concert or participation with any of them, are temporarily restrained and preliminarily and permanently enjoined from referencing in any pending or future litigation, arbitration or proceeding the NDA Material, any information contained in it, and/or any other information provided by Vringo pursuant to the NDA;

f.     That Vringo be awarded its attorneys' fees and costs;

g.     That Vringo be awarded such other and further relief as this Court deems just and proper.

Dated: July 2, 2014

          Respectfully submitted,

          VRINGO, INC.

          _____
          KARL GEERCKEN
          AMBER WESSELS-YEN
          Alston & Bird LLP
          90 Park Avenue
          New York, New York 10016
          Telephone: (212) 210-9400
          Facsimile: (212) 210-9444
          karl.geercken@alson.com