UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

VRINGO INC. and VRINGO                              Civ. Action No.
INFRASTRUCTURE, INC.,                              14 CV 4988 (LAK)

                         Plaintiffs,

          -against-

ZTE CORPORATION and ZTE USA INC.,

                         Defendants.
------------------------------------------------------------X


MEMORANDUM OF LAW OF ZTE CORPORATION AND ZTE USA INC. IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Robert F. Perry
Paul A. Straus
David A. Joffe
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222


ATTORNEYS FOR DEFENDANTS
ZTE CORPORATION and ZTE USA INC.

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT.................................................................................... 1

II.   SUMMARY OF RELEVANT FACTS ...................................................................... 4

      A.    Background ...................................................................................................... 4

      B.    Shenzhen Proceeding ...................................................................................... 5

      C.    New York Proceeding ...................................................................................... 8

III.  STANDARD ............................................................................................................ 9

IV.   ARGUMENT .......................................................................................................... 10

      A.    Plaintiffs Cannot Establish That Imminent, Irreparable Harm is *Likely* ............... 10

            1.    The Presentation of Evidence to a Court Is Not a Judicially-Cognizable
                  Harm ................................................................................................... 12

            2.    Civil Liability For One's Own Antitrust Violations Is Not a Judicially-
                  Cognizable Harm ................................................................................. 13

            3.    A Probability of Imminent, Irreparable Harm From Disclosure of
                  Confidential Information Has Not Been Established and Cannot Be
                  Presumed ............................................................................................. 15

      B.    Plaintiffs Cannot Establish a Likelihood of Success on the Merits ..................... 19

            1.    Plaintiffs' Breach Precludes Their Right to Recover Under the NDA ....... 20

            2.    Plaintiffs Cannot Enforce An Agreement To Suppress Evidence Under
                  Chinese Law ........................................................................................ 20

            3.    Plaintiffs Cannot Enforce an Illegal Contract to Suppress Evidence ........ 21

            4.    Plaintiffs Are Unlikely to Establish the Essential Element of Contract
                  Damages .............................................................................................. 23

      C.    Plaintiffs Cannot Demonstrate That the Balance of Hardships Tips Decidedly in
            Their Favor ...................................................................................................... 25

      D.    The Public Interest Weighs Against Granting an Injunction ............................... 26

      E.    Plaintiffs Do Not Come Into Equity With Clean Hands ...................................... 27

      F.    Plaintiffs Inappropriately Request That This Court Interfere With a Foreign
            Proceeding....................................................................................................... 28

V.    CONCLUSION ....................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allstate Insurance Co. v. Stolarz*,
    613 N.E.2d 936 (N.Y. 1993)....................................................................................21

*B.B.C.F.C. v. Bank Julius Baer & Co., Ltd.*,
    2013 WL 317577 (N.Y. Cnty. Jan. 24, 2013)...........................................................20

*Baker's Aid v. Hussmann Foodservice Co.*,
    830 F.2d 13 (2d Cir. 1987)..............................................................................11, 18

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004)..............................................................................9, 29

*Blanco v. Banco Industrial de Venezuela, S.A.*,
    997 F.2d 974 (2d Cir. 1993)...............................................................................30

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*,
    346 F.3d 360 (S.D.N.Y. Jan. 17, 2003) ...............................................................21

*Cargill, Inc. v. Charles Kowsky Resources, Inc.*,
    949 F.2d 51 (2d Cir. 1991)................................................................................21

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)..........................................................................11, 25

*Corporacion Tim, S.A. v. Schumacher*,
    418 F. Supp. 2d 529 (S.D.N.Y. 2006)..................................................................30

*Cramer v. Devon Grp., Inc.*,
    1990 WL 210306 (Dec. 12, 1990) .......................................................................12

*Cronk v. State*,
    420 N.Y.S.2d 113 (N.Y. Ct. Cl. 1979)..................................................................22

*Datapak Associates, Inc. v. Hoynash*,
    2004 WL 2290507 (S.D.N.Y. Oct. 8, 2004).........................................................11

*ENH, Inc. v. International Diffusion SRL*,
    1997 WL 294388 (June 3, 1997) .........................................................................27

*Esheva v. Siberian Airlines*,
    499 F. Supp. 2d 493 (S.D.N.Y. 2007)............................................................15, 16

*FCI Group, Inc. v. City of N.Y.*,
    862 N.Y.S.2d 352 (1st Dep't 2008)......................................................................25

*Fruition, Inc. v. Rhoda Lee, Inc.*,
766 N.Y.S.2d 437 (1st Dep't 2003) ...................................................................................24

*General Insurance Co. of America v. K. Capolina Construction Corp.*,
983 F. Supp. 403 (S.D.N.Y. 1997) ....................................................................................19

*Givenchy S.A. v. William Stuart Industries*,
1986 WL 3358 (S.D.N.Y. Mar. 10, 1986) .........................................................................25

*Golden Krust Patties, Inc. v. Bullock*,
957 F. Supp. 2d 186 (S.D.N.Y. 2013) ..........................................................................10, 18

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007) ................................................................................................10

*Hirschfeld v. Stone*,
193 F.R.D. 175 (S.D.N.Y. 2000) .......................................................................................18

*IDG USA, LLC v. Schupp*,
2010 WL 3260046 (W.D.N.Y. Aug. 18, 2010) .................................................................18

*In re Adelphia Communications Corp.*,
345 B.R. 49 (Bankr. S.D.N.Y. 2006) ................................................................................26

*In re Maxwell Communication Corp.*,
170 B.R. 800 (S.D.N.Y. 1994) ..........................................................................................30

*JFK Hotel Owner, LLC v. Hilton Hotels Corp.*,
2014 WL 1097971 (N.Y. Cnty. Mar. 14, 2014) ...............................................................23

*John Labatt Ltd. v. Onex Corp.*,
890 F. Supp. 235 (S.D.N.Y. 1999) ....................................................................................27

*Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*,
323 F. Supp. 2d 525 (S.D.N.Y. 2004) ...............................................................................18

*Kempe v. Ocean Drilling & Exploration Co.*,
1987 WL 11162 (S.D.N.Y. May 14, 1987) .......................................................................26

*Levin v. Tiber Holding Corp.*,
277 F.3d 243 (2d Cir. 2002) ..............................................................................................29

*Metro. Taxicab Board of Trade v. City of New York*,
615 F.3d 152 (2d Cir. 2010) ................................................................................................9

*Milan Music, Inc. v. Emmel Communications Booking, Inc.*,
829 N.Y.S.2d 485 (1st Dep't 2007) ...................................................................................23

iii

*Morgan Stanley DW, Inc. v. Frisby*,
    163 F. Supp. 2d 1371 (N.D. Ga. 2001) ............................................................... 28

*Nebraskaland, Inc. v. Brody*,
    2010 WL 157496 (S.D.N.Y. Jan. 13, 2010) ....................................................... 24

*Nikkal Industries, Ltd. v. Salton, Inc.*,
    735 F. Supp. 1227 (S.D.N.Y. 1990) .......................................................... 10, 28

*NML Capital, Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012) ............................................................................ 28

*Papago Tribal Utility Auth. v. FERC*,
    723 F.2d 950 (D.C. Cir. 1983) ......................................................................... 23

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*
    138 F.3d 65 (2d Cir. 1998) .............................................................................. 31

*Radiancy, Inc. v. Viatek Consumer Products Group., Inc.*,
    2014 WL 1318374 (S.D.N.Y. Apr. 01, 2014) .................................................. 27

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ........................................................................ 9, 10

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) ............................................................................ 11

*Schanbarger v. Edward Dott's Garage, Inc.*,
    421 N.Y.S.2d 937 (3d Dep't 1979) .................................................................. 24

*Scholastic Funding Group, LLC v. Kimble*,
    2007 WL 1231795 (D.N.J. Apr. 24, 2007) ...................................................... 11

*Shapiro v. Cadman Towers, Inc.*,
    51 F.3d 328 (2d Cir. 1995) .............................................................................. 11

*Silberstein v. Aetna, Inc.*,
    2014 WL 1388790 (S.D.N.Y. Apr. 09, 2014) .................................................. 11

*Spear-Newman, Inc. v. E.I. du Pont de Nemours & Co.*,
    1991 WL 318725 (D. Conn. Jan. 17, 1991) .................................................... 26

*Sunni, LLC v. Edible Arrangements, Inc.*,
    2014 WL 1226210 (S.D.N.Y. Mar. 25, 2014) ................................................. 11

*Sussman v. Crawford*,
    488 F.3d 136 (2d Cir. 2007) .............................................................................. 9

*Time Warner Cable of New York City, a Division of Time Warner Entertainment Co., L.P. v. Bloomberg L.P.,*
118 F.3d 917 (2d Cir. 1997)........................................................................26

*Tribune Co. v. Purcigliotti,*
1996 WL 337277 (S.D.N.Y. June 19, 1996) .........................................22-23

*Trs. Of Leake and Watts Orphan House of City of New York v. Hoyle,*
139 N.Y.S. 1098 (Westchester Cnty. 1913)..............................................22

*United National Maintenance, Inc. v. San Diego Convention Center Corp., Inc.,*
2012 WL 3861946 (Sept. 5, 2012)..........................................................14

*Vantico Holdings S.A. v. Apollo Management., LP,*
247 F. Supp. 2d 437 (S.D.N.Y. 2003).......................................................17

*Villacorta v. Saks Inc.,*
2011 WL 2535058 (N.Y. Cnty. May 06, 2011)............................................25

*Willis of New York v DeFelice,*
750 N.Y.S.2d 39 (1st Dep't 2002) ...........................................................19

*Winter v. Natural Resources Defense Council, Inc.,*
555 U.S. 7 (2008)..................................................................10, 11, 17

*Zeebaas, LLC v. Koelewyn,*
2011 WL 5025327 (D. Conn. Oct. 21, 2011) .............................................18

## STATUTES

Civil Procedure Law of the People's Republic of China CPL............................. passim

## OTHER AUTHORITIES

Alan E. Garfield, *Promises of Silence: Contract Law and Freedom of Speech*, 83 Cornell L. Rev. 261, 332 (1998) ............................................................................22

Charles Alan Wright et al*., Federal Practice & Procedure* § 2948.1 (3d ed. & Supp. Apr. 2014) .................................................................................................14

22 N.Y. Jur. 2d Contracts § 174..................................................................22

Zhu Zhe and Yang Wanli, *Court cases reach record high in 2009*, China Daily (Mar. 12, 2010, 7:06 a.m.) .......................................................................................17

Restatement (First) of Contracts § 554 (1932) ...............................................22

Defendants ZTE Corporation ("ZTE") and ZTE USA Inc. submit this memorandum of law in support of their opposition to the motion by plaintiffs Vringo Inc. and Vringo Infrastructure, Inc. (collectively, "plaintiffs") for a preliminary injunction (the "Motion").[1]

## I.     PRELIMINARY STATEMENT

Plaintiffs have come before this Court seeking the extraordinary and drastic equitable relief of a temporary restraining order (which they have obtained) and a preliminary injunction (which they are now seeking), all based on a tale of supposed prejudice and imminent harm caused by what they allege is defendants' unilateral and improper conduct. But plaintiffs have not told the Court the whole story. Specifically, plaintiffs have failed to disclose to this Court, either in their motion papers or at the July 7 TRO hearing, a critical fact that is dispositive of their motion on several different grounds. Just two weeks before commencing this action, plaintiffs filed with the European Commission confidential information that is protected by the same December 13, 2013 nondisclosure agreement (the "NDA") that is the basis of their claim here. On June 4, 2014, plaintiffs asked ZTE to waive the NDA's protections so that they could file that information in response to ZTE's action in the European Commission. Without waiting for a response, on June 18, 2014 plaintiffs filed that information with the Commission and served a redacted version of their response on ZTE. In other words, at the time plaintiffs sued ZTE for breach of the NDA and moved for a TRO and preliminary injunction based on ZTE's filing of NDA-protected materials with a court in China, plaintiffs themselves had already filed materials protected by the exact same NDA with a court in Europe.

---

[1] ZTE USA Inc. was named in plaintiffs' complaint, but it is not a party to in the Chinese legal proceeding at issue in this action. As such, there is no basis or purpose for injunctive relief as to ZTE USA Inc.

This fact, which plaintiffs have not disclosed to the Court, has a number of important implications for this motion.  First and foremost, plaintiffs' willingness to file NDA material in their defense with the European Commission while attempting to prevent ZTE from using it in the Chinese court strongly suggests that their motion is not a genuine effort to protect confidential information, but rather an improper attempt to use the NDA to insulate themselves from liability for their own tortious conduct and to avoid litigating in what they perceive to be an unfavorable forum. Plaintiffs cannot seriously come into a court of equity and seek to enjoin ZTE based on the same actions they have taken themselves.  In addition, if ZTE's filing in China is a breach of the NDA then so is plaintiffs' filing in Europe; plaintiffs cannot succeed on the merits of a claim for breach of a contract they themselves have breached.

Given plaintiffs' inequitable conduct, made worse by their failure to disclose it to the Court, the Court should deny plaintiffs' motion on this basis alone.  But plaintiffs have also failed to carry their burden on any of the elements required for a preliminary injunction.

First, plaintiffs have not demonstrated, and cannot demonstrate, a likelihood of irreparable harm.  Under the law of this Circuit, that is the first item to be considered by this Court and without it, plaintiffs are not entitled to an injunction.  Plaintiffs do not dispute that court files in China are legally available only to the judges, clerks and attorneys for the parties to the case.  To try to show harm, they present a declaration from a Hong Kong-resident attorney who states that it is "possible" that other individuals could gain illegal access to the files.  The U.S. Supreme Court has held, however, that plaintiffs must show, not that irreparable harm is possible, but that it is probable.  They have not, and cannot demonstrate this likelihood.  In the four months the information has been on file, plaintiffs have not been able to present evidence of a single instance in which any information was leaked to a competitor.  In fact, plaintiffs concede

that they did not even know this action existed until they were notified by the Court.  Plaintiffs'
effort to show irreparable harm from ZTE's filing of NDA material in China is also undermined
by their filing of NDA material in Europe.

    Second, plaintiffs cannot show a likelihood of success on the merits.  If filing NDA
material with a foreign court is a breach of the NDA, then plaintiffs themselves are in breach of
the NDA; under New York law, that itself defeats their claim against ZTE.  In addition, New
York law does not permit plaintiffs to use the NDA to suppress evidence of their abuse of their
dominant market position in a valid legal proceeding.  While parties can (and routinely do) agree
not to use offers of compromise as evidence of the merits of their claims, what parties may not
do is agree, prospectively, to suppress competent evidence of another party's tort.

    Third, plaintiffs cannot demonstrate that the balance of hardships tips in their favor, let
alone decidedly in their favor.  As shown above, plaintiffs have not demonstrated that their
supposed harm – the possibility that one of their competitors might illegally obtain information
from the closed court file and somehow use it against them – is likely.  The harm facing ZTE, on
the other hand, is clear, direct and unspeculative:  If the preliminary injunction issues, ZTE will
be prevented from using competent evidence in support of its claim in China; if the full
injunction were granted, ZTE would be prevented from proceeding in China at all.  On the other
hand, plaintiffs will be free to use NDA materials to support their claims and defenses, as they
are already doing in at least one forum.

    Fourth, the public interest weighs against granting an injunction.  The only interest served
by an injunction would be plaintiffs' own private interest in avoiding liability for abuse of their
dominant market position; it is not an interest the public shares.  On the other hand, there is a
strong public interest in the very rights ZTE seeks to vindicate:  the ability of the judiciary to

consider competent evidence and the enforcement of antitrust laws, which are intended to protect the public at large.

Fifth, plaintiffs' coming into this Court to enjoin ZTE from using NDA materials, without disclosing the fact plaintiffs themselves had used NDA materials in exactly the same way, is exactly the type of inequitable conduct the doctrine of unclean hands is intended to avoid rewarding.  It should foreclose any consideration of their request for equitable relief.

Sixth, plaintiffs' requested relief would have this Court interfere with a foreign proceeding.  As this Court noted at the TRO hearing in this matter, plaintiffs may not ask the Court to issue an injunction that will not only bind ZTE, but which will also interfere with the Chinese court's ability to decide the case before it.   That is not permitted.

Plaintiffs' motion for  a preliminary injunction should be denied.

## II.   SUMMARY OF RELEVANT FACTS

### A.   Background

ZTE is a telecommunications equipment and systems company headquartered in Shenzhen, China.  The company develops and produces wireless, exchange, access and optical transmission gear, telecommunications software, as well as mobile phones.  Declaration of Zhao Wang ("Wang Declaration") ¶ 2.  It is one of the five largest smartphone manufacturers in China, and one of the ten largest worldwide.  *Id.*

Plaintiffs are engaged in the business of monetizing, or collecting money for, telecommunications patents, including more than five hundred patents that plaintiffs purchased from Nokia in August 2012.  Wang Decl. ¶ 3.  These purchased patents include several that had earlier been declared essential by Nokia to wireless communications standards, *id.*, including standards commonly known as 2G, 2.5G, 3G and 4G and related technologies.  Such wireless communications standards, in this case set by the European Telecommunications Standards Institute ("ETSI"), are meant ensure that different companies' devices are mutually

interoperable, which effectively makes the use of patents essential to those standards mandatory in the industry.  For this reason, organizations such as ETSI require that developers of these essential patents, such as Nokia, to grant licenses for their use on fair, reasonable and non-discriminatory terms ("FRAND").  *Id*. ¶ 4.  As assignees of Nokia's patents, plaintiffs are required to comply with FRAND licensing obligations.  *Id*.

Beginning two months after their acquisition of Nokia's patents, plaintiffs filed numerous patent suits against ZTE on a worldwide basis, including in the United Kingdom, France, Germany, Australia, India and Spain.  Wang Decl. ¶ 5.   In order to discuss the settlement of these suits, plaintiffs and ZTE met—at a meeting that took place in Shenzhen, China—in December 2013.  *Id*. ¶ 6.  Additionally, in advance of that meeting, plaintiffs sent to ZTE, at its offices in Shenzhen, China. a Non-Disclosure Agreement, *see* Compl. Ex. A (the "NDA"), which stipulated that certain confidential information related to the settlement discussions shall not be "made the subject of any public comment or press release," nor shall it be "used or referenced in any way by any Party in any existing or future judicial or arbitration proceedings," *id*. § 1.  The NDA also provided, however, that, "[n]otwithstanding the foregoing [restrictions], the confidentiality obligations set forth in [section 1 of the NDA] shall be subject to the obligations imposed on each Party under applicable law and regulation."  Finally, the NDA contained choice-of-law and forum-selection clauses, respectively pointing to New York law and to federal and state courts located in Manhattan, New York.  *Id*. §§ 12-13.  On December 9, 2013, the NDA was signed by ZTE in Shenzhen, China and sent to the plaintiffs.  Wang Decl. ¶ 6.

### B.    Shenzhen Proceeding

The parties' discussions did not lead to a settlement, and within weeks of their December 2013 meeting, ZTE was again sued by plaintiffs in multiple countries, this time including Germany and India.  Wang Decl. ¶ 7.  Additionally, plaintiffs engaged in certain conduct and statements—including threats of worldwide lawsuits, forced acceptance of transaction terms, and

the setting of unfairly high prices*, see* Compl. Ex. C at 7[2]—that constituted an abuse of market dominance, in violation of the Anti-monopoly Law of the People's Republic of China.  *See* Wang Decl. ¶ 9; *see also* Compl. Ex. C at 6.

Thus, on February 21, 2014, ZTE brought a cause of action against plaintiffs for abuse of market dominance in the Intermediate People's Court of Shenzhen, in Guangdong Province, China (the "Shenzhen Court").  Wang Decl. ¶ 10.  Pursuant to the mandatory, non-waivable requirements of the Civil Procedure Law of the People's Republic of China, ZTE's statement of complaint submitted to the Shenzhen Court set forth the identity of the parties, "the facts and grounds on which the suit is based," and "the evidence and its source."  Declaration of Jianjun Cao ("Cao Declaration") Ex. 1 ("CPL"), Art. 110(2)-(3).  That evidence—which ZTE believed to be probative of and relevant to its claim of abuse of market dominance, and which it was therefore obligated to submit, *see* CPL Art. 123—included certain materials relating to the December 2013 meeting.

Under the laws and regulations of China, the materials filed by ZTE with the Shenzhen Court in its antitrust proceeding are treated as confidential.  Cao Decl. ¶ 8.  These materials are only available to the judges and law clerks assigned to the case.  *Id*.  They are not accessible to the general public, nor to any lawyers not involved in the case.  *Id*.

After the complaint was filed with the Shenzhen Court, pursuant to Article 123 of the CPL, examined the material submitted by ZTE and determined that "satisfies the conditions for the institution of actions."  CPL Art. 123.  Based on that determination, the case was placed on the docket and the Shenzhen Court proceeded to "notify the parties concerned," which the CPL Article 123 explicitly requires courts (and not parties) to do.

Currently, the Shenzhen Court's schedule for the case sets a date of August 14, 2014 for an "evidence swap" hearing and a date of August 15, 2014 for a substantive hearing.  Wang

---

[2]  Each of these characterizations is taken, verbatim, from documents attached to the Complaint  the plaintiffs filed in this Court and made publicly available via this Court's Case Management/Electronic Case Files system.

Decl. ¶ 13.  Both of these hearings can be closed to the public at either party's request pursuant to Article 134 of the CPL (cases involving trade secrets may not be heard in public "if a party so requests")   CPL Art. 134.   Additionally, Article 68 of the CPL provides that: "Evidence involving State secrets, trade secrets or private matters of individuals shall be kept confidential. If such evidence must be presented in court, it may not be presented in a public court session." C.[3]

On June 4, 2014, plaintiffs notified ZTE that they wished to respond to a complaint filed earlier by ZTE before the European Commission.  *See* Wang Decl. Ex. A (Letter from Alexander R. Berger to Shen Jianfeng (June 4, 2014)).  In order to file their response, plaintiffs explained, they will "need to disclose" documents that they believe are covered by the NDA.  *Id*. Thus, plaintiffs sought from ZTE a limited waiver of Section 2 of the NDA that would allow confidential material to be filed with the European Commission.  *Id.*

Rather than wait for ZTE's response, Vringo apparently waived the NDA unilaterally. On June 18, 2014, Vringo filed with its response to European Commission what appears to be information from the very same settlement discussion that it seeks to stop ZTE from using ("NDA Material").  Wang Decl. ¶ 14.  Inexplicably, rather than withholding the NDA Material from the tribunal (which is what it now demands of ZTE), Vringo instead disclosed confidential information subject to the NDA to the tribunal—and withheld it from ZTE.  *Id.*  Thus, in the only version of Vringo's response provided to ZTE, the NDA Material is fully redacted.  *Id.*  Portions of Vringo's response, which is marked "VERSION FOR ZTE; CONTAINS CONFIDENTIAL INFORMATION," are attached as Exhibit B to the Wang Declaration.

Unaware that Vringo had already filed NDA Material for which it sought a waiver, ZTE responded to Vringo's letter on June 24, 2014.  *See* Wang Decl. Ex. C (Letter from Shen Jianfeng to Alexander Berger (June 24, 2014)).   In its letter, ZTE explained that it would agree

---

[3] In addition, any publicly-issued judgment of the Court will be redacted for trade secrets and other confidential material.  Cao Decl. ¶ 10.

to Vringo's proposed waiver, but only on the condition that the waiver be reciprocal. *Id.* ZTE has not received any reply from plaintiffs. Wang Decl. ¶ 15.

### C. New York Proceeding

On July 2, 2014, plaintiffs filed their complaint, asserting a claim for breach of contract and alleging that ZTE breached the NDA when it brought its claim for abuse of market dominance before the Shenzhen Court. Compl. ¶ 51. The next day, on July 3, 2014, plaintiffs moved for a temporary restraining order and preliminary injunction, requesting that this Court: (i) order ZTE to withdraw its action in the Shenzhen Court and claw back the evidence submitted; (ii) enjoin ZTE from pursuing "any further litigation in the Shenzhen Court or any other court in the [sic] Guangdong Province regarding any same or similar claims;" (iii) order ZTE to withdraw any material it submitted to any other court that plaintiffs believe is subject to the NDA; and (iv) enjoin ZTE "from referencing in any pending or future litigation or arbitration . . . [any] information provided by [plaintiffs] pursuant to the NDA." Mem. of Law of in Support of Mot. For TRO and Prelim. Inj. ("Plaintiffs' Brief") at 2-3.

In support of their motion, plaintiffs argue that they would suffer irreparable harm "if the Chinese Action were to proceed based on a complaint that relies heavily on the NDA Material. . . ." Pls.' Br. 8. Additionally, plaintiffs point to the harm to their "competitive interest that would result if [their] settlement offer . . . becomes available to [their] competitors and customers," noting that this latter harm is "unmeasurable and arguably a multiple of the amounts at issue in the Chinese Action." *Id.* at 9. In support of their argument that this latter harm to their reputation from disclosure is imminent, plaintiffs submitted a declaration from Douglas Stephen Clark, a barrister in Hong Kong, who states that, in his experience, certain "well-connected lawyers, not involved in a particular case, have been able to access court files" in China. Declaration of Douglas Stephen Clark ("Clark Declaration") ¶ 8. Mr. Clark further notes that, "[w]hile this has become less common in recent years, it is possible that other individuals not involved in the case could access the court file." *Id.* (emphasis added).

At a hearing on plaintiffs' motion for preliminary injunction held on July 7, 2014, this Court denied plaintiffs' first three requests, which it found to be "dramatically overreaching," [July 7], 2014 Hearing Tr. 26:6-7. and granted plaintiffs' fourth request.  Thus, pursuant to this Court's July 9, 2014 Order, ZTE is currently "enjoined from using, referencing, or disclosing any Confidential Information" as defined in the NDA, and remains so enjoyed until this Court rules on the Motion.

### III.   STANDARD

The Second Circuit has instructed that "[i]n order to justify a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; 2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and 3) that the public's interest weighs in favor of granting an injunction."  *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010) (internal quotation marks and citation omitted), *cert. denied*, 131 S.Ct. 1569 (2011).  Because a preliminary injunction is "an extraordinary and drastic remedy," it "should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (citation omitted).[4]

Separate and apart from the requisite factors a plaintiff must demonstrate, courts properly decline to issue an injunction where the "plaintiff is not in a position to obtain equitable relief." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 436 (2d Cir. 2004).  "The guiding doctrine . . . is the equitable maxim that 'he who comes into equity must come with clean hands' . . . [which] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."  *Id.* (citation omitted) (vacating "district court's preliminary injunction insofar as it restricts [defendant] from using

---

[4] This is particularly true when the court is asked to enjoin a party from committing acts outside the United States, something the court should do only "with great reluctance . . . [because] the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country."  *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716 (2d Cir. 2004).

information obtained from [plaintiff]").  Where the plaintiff engages in the very conduct for which it seeks to enjoin the defendant, equitable relief should be denied.  *Nikkal Indus., Ltd. v. Salton, Inc*., 735 F. Supp. 1227, 1238 (S.D.N.Y. 1990).

## IV.   ARGUMENT

Plaintiffs here have not met the heavy burden required for the issuance of a preliminary injunction.  First and foremost, plaintiffs have not shown probable irreparable harm—"the <u>single most important prerequisite</u> for the issuance of a preliminary injunction."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (emphasis added).  Their only evidence of irreparable harm—a declaration stating "it is <u>possible</u>" irreparable harm will occur—was squarely held insufficient by the Supreme Court.  *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S.Ct. 365, 375-76 (2008) (rejecting "injunction based only on a <u>possibility</u> of irreparable harm") (emphasis added); *e.g.*, *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 196 (E.D.N.Y. 2013) (no irreparable harm where "plaintiffs provide[d] no specific details as to what trade secrets or confidential information were misappropriated, nor [did] they cite any evidence suggesting that such misappropriation is likely to have occurred").  While this failure to show a probability of irreparable harm precludes injunctive relief as a matter of law and renders the other factors irrelevant, plaintiffs fail to meet their burden as to the remaining factors as well.

In addition to making an insufficient showing on each of the preliminary injunction factors, plaintiffs are clearly "not in a position to obtain equitable relief."  *Register.com*, 356 F.3d at 436.  By blatantly ignoring their own request for waiver and providing the European Commission some of the very NDA Material they now move to enjoin ZTE from providing, plaintiffs essentially invite this Court to be the abettor of their iniquity.  This Court should decline the invitation.

### A.   Plaintiffs Cannot Establish That Imminent, Irreparable Harm is *Likely*

Because, as stated above, irreparable harm is the "single most important prerequisite" for

a preliminary injunction, "the moving party <u>must</u> <u>first</u> <u>demonstrate</u> <u>that</u> such <u>injury</u> <u>is</u> ***likely*** <u>before</u> <u>the</u> <u>other</u> <u>requirements</u> <u>for</u> <u>the</u> <u>issuance</u> <u>of</u> <u>an</u> <u>injunction</u> <u>will</u> <u>be</u> <u>considered</u>." *Pryor*, 481 F.3d 66 (emphasis added) (internal quotation and citation omitted).[5]  "[T]he movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation marks and citation omitted).  "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999), *cert. denied*, 531 U.S. 864, 121 S.Ct. 156 (2000).

Applying this inquiry, courts in this Circuit have consistently held that "[c]onclusory statements are an insufficient foundation on which to find irreparable harm." *Datapak Assocs., Inc. v. Hoynash*, No. 04 Civ. 5731(RCC), 2004 WL 2290507, at *2 (S.D.N.Y. Oct. 8, 2004); *Baker's Aid v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987) (upholding denial of injunction in light of "plaintiff's failure to produce any evidence of irreparable harm, other than the conclusory statement of its president. . . ."); *see also, e.g., Silberstein v. Aetna, Inc.*, No. 13 Civ. 8759(AJN), 2014 WL 1388790, at *4 (S.D.N.Y. Apr. 09, 2014) ("[p]laintiff cannot rely on conclusory assertions that irreparable harm flows directly from a [] violation"); *Sunni, LLC v. Edible Arrangements, Inc.*, No. 14 Civ. 461(KPF),  2014 WL 1226210, at *11 (S.D.N.Y. Mar. 25, 2014) (denying injunction where plaintiffs "have submitted no evidence . . . [but] have only put forth [plaintiff's owner's] declaration"), *reconsid. denied*, No. 14 Civ. 461 (KPF), 2014 WL 1327880 (S.D.N.Y. Apr. 3, 2014); *cf. Scholastic Funding Grp., LLC v. Kimble*, Civil Action No. 07-557 (JLL), 2007 WL 1231795, at *7 (D.N.J. Apr. 24, 2007)  (rejecting as insufficient

---

[5] A plaintiff's burden to clearly show that imminent, irreparable harm is likely (not just possible) is mandatory in every case, and applies <u>regardless</u> of the how strong the plaintiff's showing is on the merits.  *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37, 37 n.6 (2d Cir. 2010).  ("*Winter* rejected the . . . 'possibility of irreparable harm' standard.  To this extent, *Winter* reiterates . . . that a showing of irreparable harm is fundamental to any grant of injunctive relief.").

plaintiff's argument that "it is only a matter of time before Defendants will inevitably utilize and disclose Plaintiff's confidential information").

Plaintiffs have failed to establish the likelihood of irreparable harm.  They cannot meet their heavy burden of showing imminent irreparable harm simply with a recital in their memorandum of law that the harm from ZTE presenting evidence to the Shenzhen Court "is actual, imminent, and severe."  Pls.' Br. at 8.  Rather, plaintiffs are required to identify the specific harm they will suffer and provide non-speculative evidence that that specific harm is both irreparable and imminent.  Plaintiffs instead attempt to amplify their claim with various types of alleged "harm" that are neither imminent, nor irreparable, nor judicially cognizable as a matter of law.  Indeed, as plaintiffs' European Commission filing makes clear, they are more than willing to inflict this so-called "harm" on themselves.

1.    The Presentation of Evidence to a Court Is Not a Judicially-Cognizable Harm

Plaintiffs first point to a purported "harm" to them from the Shenzhen Court's receipt and consideration of NDA Material.  Pls.' Br. at 8.  Even setting aside the fact that the European Commission received and will consider some of the very NDA Material plaintiffs object to from plaintiffs themselves, this self-invented "harm" is a nonstarter.  Even if a court's consideration of competent evidence could be considered "harm"—which it emphatically cannot, as plaintiffs are well aware from their filing with the European Commission—obviously the Shenzhen Court's past-tense receipt of ZTE's complaint is not imminent and therefore cannot be the subject of injunctive relief.  As plaintiffs state, injunctive relief cannot be used to "unring the bell."  Compl. ¶ 43; *see also Cramer v. Devon Grp., Inc.*, No. 90 Civ. 7748 (PKL), 1990 WL 210306, at *5 (S.D.N.Y. Dec. 12, 1990) (where "the developments that plaintiff seeks to forestall have already

occurred, and [] plaintiff cannot unscramble the eggs . . . plaintiff has not met his burden of demonstrating irreparable harm").[6]

    2.    Civil Liability For One's Own Antitrust Violations Is Not a Judicially-Cognizable Harm

Perhaps recognizing that the past-tense submission of evidence to a court is neither imminent nor a harm, plaintiffs add that it "pales in comparison" to their second alleged harm: potential antitrust liability incurred for violating China's Anti-monopoly Law. To this end, plaintiffs hasten to note that they would suffer this "harm" of tort liability "if the Chinese Action were to proceed based on . . . [material] that should not be before *any court*." Pls.' Br. at 8 (emphasis added). Any court, plaintiffs mean, unless it's the court where plaintiffs themselves submitted this material. In light of plaintiffs' own actions, this argument is so thoroughly suffused with hypocrisy it is almost surreal. But even taken at face value, plaintiffs' second purported harm—*i.e.*, liability for abuse of market dominance in violation of an antitrust statute and after a trial on the merits—is unavailing in the context of a preliminary injunction, for several reasons.

First, and most obviously, despite plaintiffs' evocative "pales in comparison" phrasing, this purported harm is in fact quite quantifiable, and therefore capable of being remedied by money damages. And plaintiffs cannot be unaware of this, since the portion of ZTE's complaint they publicly filed with this court states that ZTE is claiming money damages, and even states the precise amount (in renminbi, the currency of China).[7] Whatever damages are quantified and

---

[6] Plaintiffs attempt to avoid the past-tense nature of this harm by prognosticating that they "expect that the case will be transferred" to a new court next year. Compl. ¶ 37. But as Mr. Clark, on whose affidavit this hypothesizing is based, himself concedes, this new court does not even exist: all that is known is that it "will be created," while "specific details have not been announced." Clark. Decl. ¶ 9. To allege imminent harm from an institution that has not been created and about which no details are known is beyond speculation, it is divination.

[7] This publicly-filed portion of ZTE's complaint also shows that ZTE requested the Shenzhen Court to order plaintiffs to cease violating the Anti-monopoly Law. Compl. Ex. C at 1. Not committing statutory torts is not "harm," however—it is a basic societal obligation that prevents harm to others.

imposed on them by the Shenzhen Court can be similarly quantified to compensate plaintiffs for any breach of contract claim they can prove at trial. *See Twentieth Century Fox Film Corp. v. Marvel Enters.*, Inc., 277 F.3d 253, 260 (2d Cir. 2002).

Second, plaintiffs do not show, and in fact carefully avoid attempting to show, that their purported "harm" from a future trial on the merits before the Shenzhen Court is probable. If they believe that their liability after trial is probable—i.e., that they are likely to lose—that can only mean one of two things: (i) they believe the Shenzhen Court will probably reach the wrong result; or (ii) they believe they are probably tortfeasors in violating of the Anti-monopoly Law who should be liable to ZTE. The former statement would not be backed up by a single alleged fact in support, while the latter would disserve their own self-interest. Thus plaintiffs skirt the issue, instead vaguely alluding to an imminent harm from a trial, but if and only if that trial is based on a complaint which references NDA Material. But if this harm is—again, as plaintiffs must show—probable, then plaintiffs have the same problem: either (i) the NDA Material will probably cause the Shenzhen Court will reach the wrong result, or (ii) the NDA Material is probably dispositive evidence that they are tortfeasors. Plaintiffs do not allege the former, because it would be speculation without any support. And plaintiffs certainly avoid the latter, because that would make their motion tantamount to asking this Court to suppress evidence.[8]

Unwilling for obvious reasons to assert that the Shenzhen Court's decision will probably be erroneous or that they are probably tortfeasors, plaintiffs settle for the startling allegation that judges in China are "irretrievably tainted"—while judges in other jurisdictions, such as in the European Union, where plaintiffs themselves submitted NDA Material, have "not yet [been]

---

[8] To the extent plaintiffs make the dubious argument that liability for a tort that they in fact committed is the relevant "irreparable harm," that harm is of their own making. Not surprisingly, self-inflicted harm does not qualify for a preliminary injunction. 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2948.1 (3d ed. & Supp. Apr. 2014); *e.g., United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp., Inc.*, Civil No. 07cv2172 AJB, 2012 WL 3861946, at *7 (Sept. 5, 2012) ("if the harm that will result from having to litigate . . . is self-inflicted, equitable relief is not justified"). If plaintiffs want to avoid liability for abuse of a dominant market position, the surest way to do that is by not abusing their dominant market position.

tainted," though they may be without this Court's injunction.  Compl. ¶¶ 46-47.  It is not clear what exactly this is supposed to mean.  Do plaintiffs mean to make the sweeping assertion that judges in China and Europe are inherently incapable of disregarding evidence once they see it? Such a claim insults both those judges' and this Court's intelligence.  Or do plaintiffs mean that judges will be "tainted" by the temptation to corruptly make use of the NDA Material?  This too is an unsupportable claim that is particularly inappropriate given the Second Circuit's explicit "reluctan[ce] to find foreign courts corrupt or biased." *Esheva v. Siberian Airlines*, 499 F. Supp. 2d 493, 496 (S.D.N.Y. 2007) (citing *In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) (internal quotation marks omitted)).  It would moreover put this Court in the position of being a global arbiter of judicial competence.

But most pressingly, why exactly do plaintiffs believe the European Union judges are "not yet tainted"?  These are, after all, the very same judges before whom plaintiffs submitted NDA Material.  Viewed in the light of plaintiffs' actions, their argument essentially boils down to this: judges are "tainted" when they receive confidential information from plaintiffs' adversary, but are "not yet tainted" when they receive the very same information cherry-picked by plaintiffs.  Plaintiffs, in other words, use "tainted" in the Orwellian sense: as a synonym for "informed."

Plaintiffs' condescending and conclusory assertions about foreign judges do nothing to establish that the Shenzhen Court's receipt of evidence constitutes legally-cognizable harm. Accordingly, that receipt cannot meet the mandatory threshold burden of establishing, with factual evidence, a probability of imminent, irreparable harm.

        3.    A Probability of Imminent, Irreparable Harm From Disclosure of Confidential Information Has Not Been Established and Cannot Be <u>Presumed</u>

Only plaintiffs' third and final asserted harm—"the harm to [plaintiff's] competitive

interests that would result if [their] settlement offer . . . becomes available to [their] competitors," Pls.' Br. 8, or, essentially, a "leak"—would be judicially cognizable.  But plaintiffs palpably fail to establish with non-speculative, non-conclusory evidence that an imminent leak is probable.  This absence of evidence is fatal: just as such imminent harm may not be presumed in the European Commission, where plaintiffs themselves submitted NDA Material, it may not be presumed in the Shenzhen Court.

Plaintiffs do not establish the likelihood that NDA Material will be disclosed in China because their argument rests on the false premise of a "public court action."  Pls.' Br. 8. Plaintiffs' *ipse dixit* notwithstanding, they do not challenge the fact that the relevant Chinese law very clearly provides otherwise: materials filed with the court are not available publicly, a hearing can be closed and will be closed upon ZTE's already-filed request,[9] and any judicial decision that refers to commercial secrets would be appropriately redacted.  Cao Decl. ¶¶ 8-10; *id.* Exs. 1 & 4.  These laws say what they say, and absent some sort of credible evidence to the contrary, there is no basis on which to find a probability that they will be disregarded.  *Esheva*, 499 F. Supp. at 496 (S.D.N.Y. 2007) (*citing In re Monegasque de Reassurances*, 311 F.3d at 499).

In support of their allegation that their commercial secrets will <u>probably</u> and imminently become available to their competitors, plaintiffs offer a single piece of evidence: paragraph 8 of Mr. Clark's declaration:

> In my experience, certain, generally, well-connected lawyers not involved in a particular case, have been able to access court files to obtain documents that have been filed in the case. While this has become less common in recent years, it is possible that other individuals uninvolved in the case could access the court file.

Clark Decl. ¶ 8.

---

[9] ZTE's request moots Mr. Clark's misleading assertion that the August 2014 hearing "will be open to the public."  *See* Clark Decl. ¶ 7.  This would only be the case if neither party notified the Shenzhen Court that the hearing involves commercial secrets.  But the Shenzhen Court has been notified by ZTE, so it is not the case.

If anything, this paragraph cuts against plaintiffs' required showing that imminent irreparable harm is probable. Mr. Clark's statement tells this Court simply that disclosure to certain, unnamed lawyers is "possible," albeit less likely than in the past. Nowhere does Mr. Clark explain how "common" this disclosure was in the past, how much "less common" such disclosure has become, and whether anything about his statement has even a remote connection if such disclosure has ever had any connection to the Shenzhen Court. China has nearly 3,000 courts, which as of 2009 accepted and heard more than 11.37 million cases. *See* Zhu Zhe and Yang Wanli, *Court cases reach record high in 2009*, China Daily (Mar. 12, 2010, 7:06 a.m.), http://www.chinadaily.com.cn/china/2010npc/2010-03/12/content_9576929.htm. Yet Mr. Clark's innuendo is not backed up by even a single example. This complete lack of specific information makes it impossible to draw an inference of <u>probable</u> imminent harm. *See, e.g.*, *Vantico Holdings S.A. v. Apollo Mgmt., LP*, 247 F. Supp. 2d 437, 452 (S.D.N.Y. 2003) ("[T]here has been no showing that this information has been communicated to key personnel of [plaintiff's competitor], that [plaintiff's competitor's] employees were even aware that [defendant] has such information, or that the information has been used to the competitive disadvantage of [plaintiff].").[10]

But even taken on its own terms, Mr. Clark's innuendo does not purport to allege anything more than the fact that disclosure "is <u>possible</u>." To state the obvious, anything is possible. But as the United States Supreme Court squarely and unambiguously held in *Winter*, "possible" cannot be the basis for an injunction: "[The] 'possibility' standard is too lenient. Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that

---

[10] Plaintiffs have not alleged that any of their competitors was even aware ZTE's Chinese action existed. To the contrary, plaintiffs assert the action was on file for four months without their knowledge, and they only learned it existed when, as defendants, they were notified by the Chinese court. Since there is no evidence plaintiffs' competitors even knew the case existed, plaintiffs cannot possibly establish it was likely that their competitors would have illegally obtained information from the case file.

irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original).

Unable to establish likely irreparable harm, plaintiffs instead ask this Court to presume it, arguing that "[i]t is well-established . . . that the disclosure of confidential information constitutes irreparable harm." Pls.' Br. at 8.  This is nonsense: if plaintiffs would be irreparably harmed, they would not have themselves disclosed confidential information to the European Commission.   Nor is this the law in the Second Circuit.  *E.g.*, *Baker's Aid*, 830 F.2d at *15 ("Plaintiff points to no authority in support of the proposition that irreparable harm must inevitably be assumed. . . .  We are especially loath to find an abuse of discretion in the instant situation, given . . . plaintiff's failure to produce any evidence of irreparable harm, other than [a] conclusory statement[.]").   Rather, where an injunction is sought based on a confidentiality agreement, as it is here, "restrictions in [those] confidentiality agreements[] must be justified by the need to protect trade secrets and confidential information. . . ." *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 540 (S.D.N.Y. 2004).  Where the plaintiffs "fail[] to establish the likelihood that . . . irreparable harm will result from [defendant's] conduct . . . preliminary injunctive relief enforcing these restrictions is unwarranted." *Id.*; *e.g.*, *Golden Krust Patties*, 957 F. Supp. at 197 ("Even assuming arguendo that defendants misappropriated plaintiffs' trade secrets, plaintiffs nevertheless have not established that they will thereby be irreparably harmed unless defendants are enjoined."); *Zeebaas, LLC v. Koelewyn*, Civil Action No. 3:11cv11(VLB), 2011 WL 5025327, at *10 (D. Conn. Oct. 21, 2011) ("Plaintiffs have not established that [defendant] will disseminate [their] trade secrets to a wider audience or otherwise irreparably impair the value of those secrets.").[11]

---

[11] In the cases plaintiffs cite, the party seeking the injunction did not simply hypothesize that disclosure to competitors or the public is "possible," but instead established, with specific facts, that such disclosure was already occurring or was <u>likely</u> to occur.  *IDG USA, LLC v. Schupp*, No. 10–CV–76S, 2010 WL 3260046, at *8 (W.D.N.Y. Aug. 18, 2010)  (former employee contacted "Major Customers" he previously serviced for [plaintiff]," leading to "a reduction in [] sales to ten of the thirteen Major Customers which had been serviced by [former employee]") *aff'd in part*, No. 10–3405–cv (L), 416 F. App'x. 86 (2d Cir. Mar. 25, 2011); *Hirschfeld v. Stone*, 193 F.R.D. 175, 183, 185, 192

And the presumption of likely irreparable harm from disclosure that plaintiffs urge is particularly inappropriate where, as here, it is inconsistent with the parties' incentives.  ZTE has no interest in making any NDA Material available to any of plaintiffs' competitors or counterparties.  ZTE's only incentive is to exercise its right of access to the Chinese court system, and to comply with its obligation to disclose evidence that it deems relevant—and which plaintiffs, judging by their filing of the same information in the European Commission, clearly agree is relevant—to the Shenzhen Court as required by Chinese law.  There is no reason in the record or in common sense to assume the purported "harm" of disclosure to judges (which, for the reasons set forth above, is no harm at all) somehow evidences the probability of imminent disclosure to other market participants.

## B.    Plaintiffs Cannot Establish a Likelihood of Success on the Merits

While plaintiffs' inability to establish that imminent irreparable harm is probable obviates any inquiry by the Court into the other facts, plaintiffs also cannot establish that they are likely to succeed on the merits of their breach of contract claim under New York law.  To succeed on the merits, plaintiffs would need to prove that the parties' contract precluded ZTE from bringing legally competent evidence of an antitrust violation before any court, and that the ZTE's breach was permitting the Shenzhen Court to consider such evidence.

First, and most obviously, plaintiffs cannot show that they will likely succeed on their breach of contract claim because, if ZTE's filing in the Shenzhen Court was a breach, then plaintiffs themselves breached the NDA when they filed NDA Material with the European Commission.  Second, to the extent traditional New York choice-of-law rules point to Chinese governing despite the choice-of-law clause, the NDA cannot be enforced to prohibit a legally

---

(S.D.N.Y. 2000) (information "relating to plaintiffs' medical histories" was filed by defendant "unsealed with the courts" and "accessible to the public at large"); *Willis of N.Y. v DeFelice, Inc.*, 750 N.Y.S.2d 39, 41-42 (1st Dep't 2002) (because former employee took job with plaintiff's "long-standing, direct and intense competitor" and would "not be enjoined from soliciting the clients he originally brought with him to plaintiffs, or related accounts," plaintiffs showed that disclosure was "was likely to occur").

mandated court filing.  Third, even if the NDA were governed by New York law, a contract provision used to suppress competent evidence from coming before a court is illegal and void— and, again, unenforceable.   Finally, even if plaintiffs could get around their own breach as well as the unenforceability of the NDA in this context, success on the merits would require them to prove harm caused by ZTE's alleged breach—an essential element that they cannot show.

### 1.   Plaintiffs' Breach Precludes Their Right to Recover Under the NDA

Even assuming arguendo that plaintiffs could establish ZTE breached the NDA, they would not recover for that breach because, if ZTE breached the NDA with its filing, that would mean plaintiffs themselves breached the same contract by submitting some of the same material to the European Commission.  *Gen. Ins. Co. of Am. v. K. Capolina Constr. Corp.*, 983 F. Supp. 403, 427 (S.D.N.Y. 1997) ("If one party has breached its contract in a substantial measure, the injured party . . . may continue to perform . . . and, in order to recover later for such breach, *he must perform in all essential respects upon his part*.") (emphasis in original) (citation omitted); *see also B.B.C.F.C. v. Bank Julius Baer & Co., Ltd.*, No. 604084/03, 2013 WL 317577, at *8 (N.Y. Cnty. Jan. 24, 2013) ("[A] party who seeks to recover damages from the other party to the contract for its breach must show that he himself is free from fault in respect of performance." (internal quotation marks and citation omitted)).   For this reason alone, plaintiffs do not and cannot show a likelihood of success on the merits.[12]

### 2.   Plaintiffs Cannot Enforce An Agreement To Suppress Evidence Under Chinese Law

Under New York's choice-of-law rules, even where a contract contains a choice-of-law

---

[12] To the extent plaintiffs would argue that their submission to the European Commission did not constitute a breach of the NDA, then for the same reasons ZTE's submission to the Shenzhen Court could not have been a breach either.  The common denominator is that the parties' conduct was identical, which rules out plaintiffs' success on the merits.

As set forth below in Section II.B.3, if this Court concludes that N.Y. contract law governs, the NDA should be construed as permitting submission of competent evidence to a court—because such a construction  avoids illegality.

clause, common law principles govern the law that applies to the contract. *E.g., Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936 (N.Y. 1993) (applying common-law choice of law test to contract containing choice-of-law clause).   Applying these common law principles, "New York law allows a court to disregard the parties' choice when the most significant contacts with the matter in dispute are in another state." *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (internal quotation marks and citation omitted) (applying New York law despite contract's Massachusetts choice of law provision); *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (S.D.N.Y. Jan. 17, 2003) ("although New York courts generally defer to the choice of law made by the parties to a contract . . . New York law allows a court to disregard the parties' choice when the most significant contacts with the matter in dispute are in another state" (internal quotation marks and citation omitted)).   While New York's only connection with the dispute is that it is the plaintiffs' domicile, China is where practically all of the significant actions relating to the NDA occurred: plaintiffs sent the NDA to ZTE in China; ZTE executed the NDA in China; the settlement negotiations took place in China; and, not least, a Chinese court is considering a non-frivolous claim that plaintiffs violated China's Anti-trust Law.

For these reasons, plaintiffs will be challenged to overcome the argument that Chinese law governs the NDA.  Because under Chinese law an NDA cannot not prevent a party from submitting relevant evidence to a court as they are legally required, *see* Cao Decl. ¶ 4**,** plaintiffs' claim would fail.

3.   <u>Plaintiffs Cannot Enforce an Illegal Contract to Suppress Evidence</u>

Plaintiffs' claim, based on ZTE's submission of NDA Materials to the Shenzhen Court, is equally unenforceable under New York law.   *See* Compl. ¶ 51.   Notably, plaintiffs do <u>not</u> challenge ZTE's right to bring an antitrust complaint in the Shenzhen Court.   Nor do they challenge the relevance of the allegedly confidential materials to ZTE's antitrust claim against them—nor could they, given their disclosure of the same materials.   Finally, they do not

21

challenge ZTE's position that it was required to submit the allegedly confidential materials to the Shenzhen Court—nor, again, could they, given their stated "need to disclose" the same materials to the European Commission.   Stated differently, plaintiffs do not contest that they seek to use the NDA they signed to preclude judicial consideration of evidence that is relevant to an antitrust claim and that was required to be filed.   This is akin to a contract to suppress evidence, and is therefore void.

Under N.Y. law, it has long been settled that "[a] bargain that has for its object or consideration the suppression of evidence . . . is illegal."   Restatement (First) of Contracts § 554 (1932); 22 N.Y. Jur. 2d Contracts § 174 ("A contract provision which provides that the contract may not be introduced in evidence in an action between the parties is ineffectual as tending to oust the courts of the right to consider competent evidence.").   For example, in *Cronk v. State*, 420 N.Y.S.2d 113, 116 (N.Y. Ct. Cl. 1979), the State argued that certain evidence the claimant sought to introduce was barred by the parties agreement that specifically prohibited its use in any "claim that may be filed by the Claimant."   The court refused to enforce this clause in the agreement for the reason that "it purported to totally preempt the court from its consideration of legally competent evidence. . . .   [C]ontract clauses which attempt to oust the court absolutely of this right, are void as against public policy."   *Id.* at 118; *e.g.*, *Trs. Of Leake and Watts Orphan House of City of N.Y. v. Hoyle*, 139 N.Y.S. 1098, 1099 (Westchester Cnty. 1913) (invalidating "provision in a contract that [material] shall not be put in evidence in any action between the parties relating to the subject-matter of the contract").[13]

---

[13]   Cases in which a party argues that an agreement completely preempts the court from considering a document are relatively rare.   "The reason is that parties to secret settlements often ask courts to 'seal' their agreements by incorporating the agreements into a protective order.   Sealing settlements is advantageous because parties can then rely on a court's contempt power to enforce the agreement instead of bringing a separate breach of contract action."   Alan E. Garfield, *Promises of Silence: Contract Law and Freedom of Speech*, 83 Cornell L. Rev. 261, 332 (1998).

In cases involving sealed documents, however, the court itself can review the documents being sealed—while the Shenzhen Court cannot.   Plaintiffs argue that ZTE would "gain an advantage" if the NDA materials were filed confidentially with a court, citing *Tribune*

Plaintiffs' likelihood of success is further undercut by the fact that the Court's interpretation of the contract would be guided by the canon *ut magis valeat quam pereat*—to the extent possible, contracts should be interpreted in a way that renders them lawful rather than unlawful.   This canon of construction was applied in analogous circumstances by Justice (then-Judge) Scalia in *Papago Tribal Util. Auth. v. FERC*, 723 F.2d 950, 954 (D.C. Cir. 1983) *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511 (1984), where a tribal utility authority argued that its contract with a state public service company precluded the parties from bringing electricity rates to the attention of FERC.   Justice Scalia held that because the utility authority's interpretation of the contract as an "agreement not to bring a rate . . . to the Commission's attention would be akin to a contract to suppress evidence, and therefore void," the correct interpretation "must allow" the parties to do so.  *Id.*

Here, ZTE would argue on the merits that the clause in Section 2 of the NDA providing that the confidentiality obligations are "subject to the obligations imposed on each Party under applicable law and regulation" should be applied to permit submission of competent evidence to a court at least where required by applicable law.  If the Court finds that ZTE's interpretation of the contract language is at least plausible—notably, this interpretation is the most consistent with the parties' subsequent conduct—then under the canon *ut magis valeatquam pereat* that interpretation would prevail, and plaintiffs would not succeed on the merits.

### 4. Plaintiffs Are Unlikely to Establish the Essential Element of Contract Damages

In addition to plaintiffs' claim likely failing due to unenforceability, N.Y. law is clear that, "[w]ithout a clear demonstration of damages, there can be no claim for breach of contract."  *Milan Music, Inc. v. Emmel Commc's Booking, Inc.*, 829 N.Y.S.2d 485, 486 (1st Dep't 2007); *accord JFK Hotel Owner, LLC v. Hilton Hotels Corp.*, No. 650502/201, 2014 WL

---

*Co. v. Purcigliotti*, No. 93 Civ. 7222( LAP) (THK), 1996 WL 337277 (S.D.N.Y. June 19, 1996).  But *Purcigliotti* shows the opposite: in that case, the court made its ruling after it "conducted an *in camera* review of the settlement agreement."  *Id.* at *1.  The Shenzhen Court should be allowed to do the same.

1097971, at *7 (N.Y. Cnty. Mar. 14, 2014) ("Without resulting damages, a claim for breach of contract cannot stand."). Where a party cannot show a ground from which any cognizable damage may be inferred, it is not likely to success on the merits. *See Nebraskaland, Inc. v. Brody*, No. 09 Civ. 9155(DAB), 2010 WL 157496, at *5 (S.D.N.Y. Jan. 13, 2010) ("On this record Plaintiff has not shown any damages from the alleged [breach], completely undermining the fourth element of its breach of contract claim. Accordingly, Plaintiff has not established a likelihood of success on the merits or sufficiently serious questions going to the merits.").

In light of plaintiffs' unilateral disclosure of NDA Materials to the European Commission, their claim of damages from the exact same disclosure to the Shenzhen Court cannot be taken seriously. Rather, plaintiffs' claimed injuries are currently, and are likely to remain, "conjecture and guesswork"—a basis upon which damages "cannot be awarded." *Schanbarger v. Edward Dott's Garage, Inc.*, 421 N.Y.S.2d 937, 937 (3d Dep't 1979), *appeal denied*, 49 N.Y.2d 701 (N.Y. 1980). With respect to plaintiffs' hypothesized damages from disclosure of confidential information by the Shenzhen Court: these damages have not materialized several months after the commencement of this case, and plaintiffs have given no basis for inferring that they will materialize yet. "The damages for which a party may recover for a breach of contract . . . must be proximate and certain, or capable of certain ascertainment, and not remote, speculative or contingent." *Fruition, Inc. v. Rhoda Lee, Inc.*, 766 N.Y.S.2d 437, 438 (1st Dep't 2003).

To the extent plaintiffs intend to assert as damages any liability imposed on plaintiffs by the Shenzhen Court for their abuse of market dominance as their damages, they are in no position to do so. For one thing, since plaintiffs presumably disagree with the claim that they are abusing their market dominance, plan to defend against it, and intend to win in the Shenzhen Court, they cannot at the exact same time argue in this Court that they are "likely" to lose in the Shenzhen Court.

Alternatively, if plaintiffs do not disagree that they are abusing their market dominance, but rather believe they are harmed by a court <u>declaring</u> that fact, then they are on shaky ground

indeed.  They are in that case causing harm, not being harmed and using this Court as a means to profit from their tortious conduct.  Under New York law, the fundamental principle "that no man shall be permitted to profit by his own wrong . . . enters, by implication, into all contracts. . . ." *In re Sparks' Estate*, 15 N.Y.S.2d 926, 930 (Surrogate's Ct. N.Y. Cnty. 1939).  For this reason, plaintiffs could not recover the harm they caused for their antitrust violation even if the NDA were enforceable.   "Contracts, although legal in their inducement and capable of being performed in a legal manner, which have nonetheless been performed in an illegal manner, will not be enforced."  *FCI Grp., Inc. v. City of N.Y.*, 862 N.Y.S.2d 352, 357 (1st Dep't 2008) (citation omitted), *leave to appeal denied*, 11 N.Y.3d 716 (2009); *see Villacorta v. Saks Inc.*, No. 100168/2007, 2011 WL 2535058, at *10 (N.Y. Cnty. May 06, 2011) ("since plaintiff's illegal conduct . . . was inextricably connected with the contested question of defendants' performance under the [c]ontracts [], her recovery thereunder is barred as a matter of public policy").

### C.     Plaintiffs Cannot Demonstrate That the Balance of Hardships Tips Decidedly in Their Favor

Plaintiffs are not entitled to demonstrate, and in any case are unable to demonstrate, that "there are 'serious questions' going to the merits," and "that the balance of hardships tips *decidedly* in [their] favor."  *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (emphasis in original) (citation omitted).[14]

Plaintiffs' hardship, as set forth above, consists of their fear of a hypothesized "leak" for which they provide no evidence and which is belied by their own actions in Europe.  Unlike in analogous commercial cases where courts find that the balance of the harms weigh decidedly in one party's favor, plaintiffs have not alleged that they would go out of business or would lose a large portions of their clients or customers.  *Givenchy S.A. v. William Stuart Indus.*, No. 85 Civ.

---

[14]    Plaintiffs may not rely on the "serious questions" standard in the first place because: (i) their requested injunction would provide all of the relief ultimately sought, and could not be undone if the plaintiffs do not ultimately prevail on the merits; and (ii) the plaintiff seek a mandatory injunction that would alter the status quo.  *Citigroup*, 598 F.3d at 35 n.4.

9911 (PKL), 1986 WL 3358, at *6 (S.D.N.Y. Mar. 10, 1986) (balance of harms decided favor party whose "business, built exclusively around its relationship with [movant], will likely be destroyed" by proposed injunction); *Spear-Newman, Inc. v. E.I. du Pont de Nemours & Co.*, Civ. A. No. 3:91CV00652WWE, 1991 WL 318725, at *6 (D. Conn. Jan. 17, 1991) ("the equities tip decidedly in favor" of party whose "owners . . . stand to lose their business forever"). In fact, other than vaguely alleging that their hardship is "beyond compensable," Compl. ¶ 52, they have not provided any information about what that harm actually is.

The harm facing ZTE, however, is clear. ZTE is a victim of plaintiffs' antitrust abuses and seeks to exercise its right of access to court, including by submitting some of the very NDA Materials plaintiffs have themselves submitted to the European Commission. Put another way, if this Court granted plaintiffs' requested injunction, this would permit plaintiffs to use the NDA as a sword and a shield while requiring ZTE to lay down its arms.

### D.    The Public Interest Weighs Against Granting an Injunction

The public interest clearly and strongly weighs against issuance of an injunction in this case. In applying this factor, courts typically analyze the direct impact of an injunction on the public at large. *See, e.g.*, *Time Warner Cable of N.Y. City, a Div. of Time Warner Entm't Co., L.P. v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997) (weighing public interest in maintaining public television available relative to public interest in expanding and diversifying the extent of news and information available). But plaintiffs' request implicates exclusively their own private interest—not in confidentiality, as they have themselves disclosed the confidential material, but in the ability to unilaterally select which courts can see the confidential materials (as cherry-picked by them). *See In re Adelphia Commc'ns Corp.*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("The public interest is not particularly affected, one way or another, by private litigants' interests in forum shopping.").

On the other hand, there is a weighty public interest in the very rights ZTE seeks to vindicate: in ensuring that the judiciary can view evidence unfettered; that procedural laws are

complied with; and, not least, that antitrust violations—which in the first instance are meant to protect the public at large—are properly considered and, if found, thoroughly remedied.   To the extent these are specifically in China's public interest, the public interest is in permitting China to protect those interests.   *E.g.,   John Labatt Ltd. v. Onex Corp*., 890 F. Supp. 235, 249 (S.D.N.Y. 1999) ("The public interest surely supports as little intervention as possible by a foreign government (in this case, our own) in order not to upset the considered decision of the [non-U.S.] government concerning how it should run its own affairs." (internal quotation marks and citation omitted)); *Kempe v. Ocean Drilling & Exploration Co*., Civ. A. No. 86–0891, 1987 WL 11162, at *2 (S.D.N.Y. May 14, 1987) ("Issuance of the injunctive relief . . . runs counter to the public interest, which is best served by preserving comity and respecting the jurisdiction of foreign courts.").

### E.    Plaintiffs Do Not Come Into Equity With Clean Hands

Plaintiffs' conduct in the events surrounding this action cannot be justified by the NDA or by basic notions of fairness.   After first purporting to request a waiver of the NDA from ZTE, plaintiffs  unilaterally filed NDA Materials with the European Commission without waiting for a response, provided ZTE with no access to the content of that filing, and then went on to sue ZTE for effectively doing the exact same thing.   "A plaintiff need not have led a blameless life in all respects in order to invoke equitable relief, but cannot have engaged in underhanded behavior related to the matter in which he seeks the relief."   *ENH, Inc. v. Int'l Diffusion SRL*, No. 97 CIV. 3202(LAP), 1997 WL 294388, at *2 (S.D.N.Y. June 2, 1997).   Plaintiffs' request for equitable relief against ZTE, without disclosing to the Court that plaintiffs had done exactly the same thing, fits that bill precisely.

Where a party's dubious conduct is not only related but identical to the conduct it seeks to enjoin, equitable relief is simply inappropriate.  *Radiancy, Inc. v. Viatek Consumer Prods. Grp., Inc.*, No. 13–cv–3767 (NSR), 2014 WL 1318374, at *8 (S.D.N.Y. Apr. 01, 2014)

27

("[Defendant] adequately alleges that [plaintiff] is engaging in the same conduct of which it is accusing [defendant].  Thus . . . the Court denies [defendant's] motion to strike the affirmative defense of unclean hands."); *Nikkal*, 735 F. Supp. at 1238 (explaining that equitable relief would be inappropriate where plaintiff engaged in the "very same conduct" it had challenged); *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1380 (N.D. Ga. 2001) (holding that "Morgan Stanley is estopped from seeking a restraining order against competitive conduct which it admits to engaging in").  What is more, plaintiffs disclosed none of this to the Court when they sought a temporary restraining order merely hours before the July 4th holiday weekend (which, incidentally, minimized ZTE's opportunity to investigate the facts and respond).  Simply put, if plaintiffs' hands are not unclean, then there is no such thing.

**F.    Plaintiffs Inappropriately Request That This Court Interfere With a Foreign Proceeding**

As this Court noted at the hearing on plaintiffs' motion for a TRO, its July 9, 2014 Order acts *in personam* with respect to ZTE, and not directly on any other court.  *E.g.*, *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 263 (2d Cir. 2012) (federal court sitting in equity having personal jurisdiction over party may "enjoin him from committing acts elsewhere" (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 716 (2d Cir. 2004) (internal quotation marks omitted))).  However, the remainder of plaintiffs' requested relief—*see* Pls.' Br. 2, sub-paragraphs (a)-(c)—effectively asks the Court to bind not only ZTE, but the Shenzhen Court (and potentially other courts) as well.  Among other things, ZTE cannot unilaterally withdraw its complaint from the Shenzhen Court: it may only request withdrawal, which the Court may deny.  *See* CPL Art. 145.  Similarly, whether or not ZTE "claws back" evidence, the Shenzhen Court is explicitly empowered "to take evidence from the relevant work units [i.e., juridical persons] or individuals, and such work units or individuals may not refuse to cooperate."  CPL Art. 67.

Plaintiffs' request for an injunction ordering ZTE to take actions that would interfere with the authority of a foreign court over the case before it are improper and should be denied. *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) ("[N]o court can make a decree which will bind any one but a party[.]" (quoting *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832–33 (2d Cir. 1930) (Hand, J.))).

The terms of the Court's July 9, 2014 Order, while in a different category, should not be continued in the form of a preliminary injunction. First, and most obviously, keeping the Order in place would be palpably and manifestly unfair. In particular, plaintiffs' current European Commission filing contains some of the very same materials plaintiffs ask this Court to enjoin ZTE—but not plaintiffs'—from referring to. In effect, plaintiffs seek an injunction essentially ordering one party to a pending litigation to have one hand tied behind its back for no discernible reason. On this basis alone, the Court's Order cannot remain in place.[15]

Additionally, the preliminary injunction plaintiffs seeks is exactly the kind of exercise of equitable power that the Second Circuit noted "is fraught with possibilities of discord and conflict with the authorities of another country." *Bano*, 361 F.3d at 716. It would at a minimum create significant hardship for ZTE by requiring it to navigate the application of a court order based in U.S. law to a fundamentally different civil procedure principles in China (and potentially elsewhere). It would moreover place ZTE's counsel at constant risk of violating foreign law and being held in contempt of a foreign court—for reasons outside of ZTE's control, such as where a court seeks to discuss or requests evidence *sua sponte*. *See* CPL Art. 67 ("The people's court shall have the right to investigate and take evidence from the relevant work units

---

[15] If the Court wishes to keep the terms of its Order in place via a preliminary injunction, that injunction should at the absolute minimum explicitly permit ZTE to refer to the NDA Material in the European Commission.

or individuals, and such work units or individuals may not refuse to cooperate."). These are precisely the kind of concerns that strongly militate against the issuance of injunctive relief in these circumstances. *See In re Maxwell Commc'n Corp.*, 170 B.R. 800, 809 (S.D.N.Y. 1994) ("Once it is determined that the facts as a whole have a center of gravity outside the U.S., then the court's attention should shift to the propriety of the proposed extraterritorial application of U.S. law."), *aff'd*, 93 F.3d 1036 (2d Cir. 1996).

Finally, the Court should deny plaintiffs' motion because the Shenzhen Court can fully and fairly resolve the parties' dispute in the first instance. While the plaintiffs may find the Federal Rules of Civil Procedure more favorable than the Civil Procedure Law of the People's Republic of China, that does not suffice. "[T]he unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993).

In fact, plaintiffs have never put the issues they raise in this Court before the Shenzhen Court and have given this Court <u>no</u> basis to determine that the Shenzhen Court inadequate to handle them. Mr. Clark's innuendo notwithstanding:

> American courts should be wary of branding other nations' judicial forums as deficient in the substance or procedures that their laws contain. Such denunciations not only run counter to principles of international comity and could retard efforts to reform foreign tribunals, but also risk imposing on our judicial system the burden of serving as courtroom to the world for the adjudication of essentially foreign disputes with only nominal connections with the United States.

*Corporacion Tim, S.A. v. Schumacher*, 418 F. Supp. 2d 529, 532-33 (S.D.N.Y. 2006), *aff'd*, 223 F. App'x. 37 (2d Cir. 2007); *see also Blanco*, 997 F.2d at 982 ("it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation" (internal quotation marks and citation omitted)).

Because plaintiffs have made no "showing of inadequate procedural safeguards," *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.* 138 F.3d 65, 73 (2d Cir. 1998), considerations of comity militate strong in favor of denying their motion and permitting the Shenzhen Court (as well as the European Commission, and potentially other courts) to resolve the parties' disputes.

## V.     CONCLUSION

For the foregoing reasons, the Court's Temporary Restraining Order dated July 9, 2014,

should be vacated, and plaintiffs' motion for a preliminary injunction should be denied in all

respects.

Dated: New York, NY
       July 17, 2014

/s/  Paul A. Straus
Robert F. Perry
Paul A. Straus
David A. Joffe

KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: 212.556.2100
Fax: 212.556.2222

ATTORNEYS FOR DEFENDANTS
ZTE CORPORATION and ZTE USA INC.