Ef47vric

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
      VRINGO, INC., et ano.,
 3                    Plaintiffs,
                 v.                          14 Civ. 4988 (LAK)
 4    ZTE CORPORATION, et ano.,
                    Defendants.
 5    ------------------------------x
      ZTE CORPORATION, et ano.,
 6                    Plaintiffs,
                 v.
 7    VRINGO, Inc., et ano.,
                    Defendants.             New York, N.Y.
 8    ------------------------------x       April 7, 2015
                                            10:00 p.m.
 9

10    Before:

11            HON. LEWIS A. KAPLAN

12                                          District Judge

13
              APPEARANCES
14

15    ALSTON & BIRD LLP
           Attorneys for Vringo
16    BY:  KARL GEERCKEN
           AMBER WESSELS-YEN
17

18    KING & SPALDING
           Attorneys for ZTE
19    BY:  DAVID JOFFE
           PAUL A. STRAUS
20         ROBERT F. PERRY

21    BRINKS GILSON & LIONE LLP
           Attorney for Plaintiff ZTE
22    BY:  JAY. H. REIZISS

23

24

25
```

Ef47vric

1    ef47vric                    Conference

2            THE COURT:  Good morning.  Please be seated.

3            Call the case, please.

4            THE LAW CLERK:  Vringo, Inc., v. ZTE Corporation.

5            Plaintiffs, are you ready?

6            MR. GEERCKEN:  Yes, we are.

7            THE LAW CLERK:  Defendants, are you ready?

8            MR. STRAUS:  Yes, we are.

9            THE LAW CLERK:  ZTE v. Vringo, Inc., plaintiffs, are

10   you ready?

11           MR. REIZISS:  Yes, your Honor.

12           THE LAW CLERK:  Defendants, are you ready?

13           MR. GEERCKEN:  Yes, we are.

14           THE COURT:  You folks, or one of you at any rate,

15   requested this conference.  So let's start with you and then of

16   course I have a few things that I propose to discuss with you.

17           Why don't we begin with you.

18           MR. GEERCKEN:  Thank you, your Honor.  I am Karl

19   Greercken from Alston & Bird, and with me is my colleague Amber

20   Wessels.

21           THE COURT:  I would appreciate it if you would first

22   of all go to the lectern and secondly speak a little more

23   distinctly.

24           MR. GEERCKEN:  Yes, your Honor.  I will head over to

25   the microphone right now.

Ef47vric

1              Is that a little better, your Honor?

2              THE COURT:  It is.

3              MR. GEERCKEN:  On behalf of Vringo we wanted to visit

4      with you this morning, your Honor, to discuss a couple of

5      issues, namely, discovery, generally scheduling.

6              There is a current motion to compel and there have

7      been some disputes about the parameters of the protective

8      order.  So we wanted to bring that to your attention and talk

9      with you if not about the substance of each of these issues to

10     discuss with you a mechanism by which you would like to see

11     these resolved whether by individual motion brought to your

12     Honor's attention or whether you would like us to visit with a

13     magistrate on some of these issues.

14             The scheduling issue is becoming acute.  Fact

15     discovery, the production of documents was to be concluded by

16     March 31st.  That was one of the reasons why we wanted to call

17     this conference.  To date only a single document has been

18     produced, and that was an exhibit to the motion to compel.  As

19     I get underway, your Honor --

20             THE COURT:  This was produced by the other side;

21     right?

22             MR. GEERCKEN:  That's correct.

23             As your Honor can tell there are folks in the gallery

24     here and there are some confidentiality issues as you know that

25     have been raised while Vringo may dispute --

Ef47vric

1          THE COURT:  Why is it only one document has been

2    produced?  The discovery plan was entered almost six months

3    ago.

4          MR. GEERCKEN:  Your Honor, I think the reason that it

5    hasn't been produced are the difficulties we've been having

6    with the protective order and then there have been Chinese law

7    objections raised by our adversary.  Virtually all of their

8    document requests contain an objection based on Chinese law.

9    So that seems to be a gating issue for our adversaries.

10          THE COURT:  It probably won't be for very long.

11          MR. GEERCKEN:  So that is part of it and part of it is

12    the protective order and I can tell you very briefly --

13          THE COURT:  I don't need to know.  What we're going to

14    do on the protective order is you're either going to submit an

15    agreed draft by Thursday at 2:00, or you're going to submit to

16    me, each of you, as much of an agreed draft as you can with the

17    alternate provisions on which you disagree.  You're going to

18    submit it in print and in a WordPerfect format, and you'll have

19    a protective order before the week is out but no later than

20    next week.

21          MR. GEERCKEN:  Thank you, your Honor.  So that deals

22    with that issue.

23          On scheduling we had proposed a three-month extension

24    of all deadlines.  Given the issues that have arisen with

25    Chinese law, and we can't look into the future, but we're

1    concerned that Chinese law may be raised as an objection to the

2    deposition phase of the case as well; but we'll try and proceed

3    and let you know when that occurs or if that occurs.

4            Another issue that we wanted to bring up with you,

5    your Honor, was the possibility of consolidation of the two

6    cases now before you.  Given that discovery has been delayed in

7    the first case before you, the MDA case I will refer to it as,

8    we think it is appropriate at least at this point for discovery

9    purposes to have consolidation of the two cases so that we can

10   get both cases on the same schedule.  And our goal is to move

11   forward with as much alacrity as possible and I think there is

12   good case law that indicates the Court has broad discretion in

13   dealing with consolidation issues for judicial efficiency

14   reasons.  There is a recent case --

15           THE COURT:  You don't have to follow up with case law.

16           MR. GEERCKEN:  Thank you, your Honor.

17           So that is a topic that we thought was worthy of

18   consideration today, your Honor.  Finally, the third topic that

19   we wanted to bring up is that we believe that there is now a

20   basis for at least one or two additional claims by the

21   plaintiffs in the MDA case, and we anticipate making a motion

22   to amend shortly.  We believe we could have that motion ready

23   probably within a week.  We believe, however, that depending on

24   the results of the motion to compel, we may have yet another

25   breach of the MDA that we would like to include in our

Ef47vric

1   complaint as well.  Your Honor, those are the three topics that

2   we wanted to put on the table for you this morning.

3           THE COURT:  Let me hear from the other side.

4           MR. STRAUS:  Good morning, your Honor.  Paul Straus

5   with King & Spalding for defendants ZTE Corporation (USA).

6           The first point, your Honor, I just wanted to clarify

7   that the Chinese law objections that Mr. Greercken referred to

8   are not blanket objections to the production of documents.

9   They go to one category of documents that plaintiff requested,

10  which are communications with the NDRC regarding an ongoing

11  investigation and we have not asserted that as a basis for

12  withholding any other category of documents.

13          As far as the protective order goes, we understand

14  your Honor's ruling on that.  The extension of the deadline and

15  consolidation, it is not clear to us, your Honor, there should

16  be consolidation here in that the FRAND and the MDA cases are

17  very different cases.

18          THE COURT:  Your document requests in the MDA case are

19  directed in significant part to stuff that has nothing to do

20  with the MDA case but is directed instead to the other case.

21          MR. STRAUS:  It is actually directed to two things,

22  your Honor.  One is damages because we've asked plaintiffs to

23  identify competitors or customers who they believe are

24  potentially licensees who they believe have received

25  confidential information.  We have asked them to identify

```
1   negotiations with those kinds of parties that have been

2   impacted by confidential information.  I am going through the

3   document requests that the plaintiffs cited in their letter.

4               THE COURT:  Look, you have the same parties in both

5   cases; right?

6               MR. STRAUS:  Correct, your Honor.

7               THE COURT:  Now, can you articulate any rational

8   reason why discovery in the two cases should be done in anyway

9   other than together the effect of which would that if discovery

10  is taken in Case II and an attempt is made to use in Case I, it

11  might be subject to objection on the ground that was taken in

12  the other case and vice versa?  Is there any rational reason

13  why anybody who has got any experience in civil litigation

14  should go for that for any purpose other than delay and

15  harassment?

16              MR. STRAUS:  Well, your Honor, I think don't think it

17  will cause delay because the MDA is further along.

18              THE COURT:  So your view is that if they want to take

19  a deposition of Mr. Jones, they should take it in this case and

20  if later on they decide they need Mr. Jones in the other case,

21  they should take Mr. Jones' deposition in that case at which

22  point, if I wasn't born yesterday, I would expect a motion from

23  your side saying, Oh, no, they had their chance before and

24  we'll have an motion whether they get to get a shot at Mr.

25  Jones again, and that would be consistent with behavior I've
```

Ef47vric

1    seen in this case so far.

2          MR. STRAUS:  I think we can handle that through

3    coordination.

4          THE COURT:  I think we're going to handle it.

5          MR. STRAUS:  The one issue I would raise on the

6    protective order, your Honor, and we'll obviously be instructed

7    by your Honor's ruling, but one of the very large points that

8    was raised was that, the plaintiffs are seeking to keep all

9    documents produced within the United States and not permit any

10   documents to be produced outside of the United States.

11         THE COURT:  I don't think I understand what you are

12   saying.

13         MR. STRAUS:  So the draft of the protective order that

14   the plaintiffs provided to us has a provision that would

15   include a category of documents that if they are produced by a

16   party in the United States, by Vringo for example, they could

17   not be sent outside the United States.  So, for example, if

18   there are witnesses in China, we would have no opportunity to

19   share documents with those witnesses even if it would otherwise

20   be permissible under the terms of the protective order just

21   because of the geography.  It is obviously a provision that

22   impacts one side because Vringo is located in the United

23   States.  When it comes to depositions, both sides will need to

24   show documents to witnesses and to the extent that witnesses

25   are in China, this would prevent either side from showing these

Ef47vric

documents designated this way to those witnesses.  We'll submit

the protective orders, your Honor, but I wanted to get some

insight as to why it has been difficult to reach agreement on

the protective order.  We think it is a large issue and not a

fair one to our client.

          There is some other discovery issues that we have

raised that we have met and conferred with the plaintiffs

about.  As far as we understand we're still meeting and

conferring.  We're still waiting for them to respond on certain

issues.  So I think it is premature to raise them with your

Honor, but I wanted to flag those as well.

          THE COURT:  I don't know what they are and I have

therefore no view whatever on substance.  What I do have a view

on is that both of you jointly submitted to me, and I approved

it, in October of last year a discovery plan that said document

discovery would be substantially completed by 10 days ago and

that all fact discovery would be completed by June 5th.  The

first part of that obviously is total pie in the sky.  It just

never happened.  It is not that you fell short of the goal; it

is that you never moved and inch toward the goal.  The second

of those criteria, completion of fact discovery by June 5th,

obviously is not going to happen and my view is a very simple

one:  You have a schedule, you proceed on the basis that you

will comply with it, not sort of, not we wanted to but didn't,

the answer is you comply with it.  If at any point along the

1  road there is a problem, you come to me not three months after

2  you realize there is a problem, hours after you realize there

3  is a problem.  If I can being possibly do it, and I usually

4  can, that problem will be solved immediately.  If I can't solve

5  it that quickly, I will get a magistrate judge who will.  If

6  they are too heavily burdened, I will appoint a discovery

7  master at your mutual expense to do it for you in realtime.  I

8  am not going to put up with this.

9            MR. STRAUS:  Yes, your Honor.

10           THE COURT:  So there is really no reason why I

11 shouldn't roll this schedule 90 days as the other side asks

12 because obviously neither of you can possibly comply with it.

13           You are in default already; right?

14           MR. STRAUS:  Some extension is required, your Honor.

15           THE COURT:  It is rolled 90 days.  In No. 4988.  We'll

16 talk about consolidation momentarily.

17           Anything else?

18           MR. STRAUS:  No, your Honor.

19           THE COURT:  What is the problem with consolidating

20 discovery, putting off to another moment the question of

21 whether there is a full consolidation of the two cases?

22           MR. STRAUS:  One of the issues was timing, which your

23 Honor has addressed.  There may be other issues in terms of --

24 the cases are very different.

25           THE COURT:  I understand.  You've made clear that a

Ef47vric

1   lot of facts in your view anyway relate to both.

2           MR. STRAUS:  I actually respectfully disagree with

3   that, your Honor.  The document requests that the plaintiffs

4   were talking about, the two of them that do actually relate to

5   FRAND we're asking for documents relating to specific

6   allegations in their complaint about that.  I don't know that

7   they are relevant.  It is not the determination that needs to

8   be made in the MDA case.  The issue is in the MDA case goes

9   to --

10          THE COURT:  One of two things is two true.  They are

11   irrelevant to the MDA case or they are not.  If they are

12   irrelevant to the MDA case that is one thing, but that is not

13   the position that you are taking.  So if they are relevant to

14   that and they are relevant to FRAND why should the discovery go

15   on two separate tracks?  I don't get it.  You are the one who

16   asked for the discovery in the MDA case.  You must think it is

17   relevant in the MDA case.

18          MR. STRAUS:  Again, the discovery that the plaintiffs

19   are talking about really goes to -- they are saying that it

20   relates to the FRAND case.  I disagree.  The document request

21   that they are citing are questions that go to their limited

22   ability to license or in any impact that the disclosure -- the

23   MDA disclosure had on their ability or inability to license the

24   patents that they are offering to or are alleging to offer to

25   ZTE.  In other words, I don't think they are framed issues.

Ef47vric

1    There are two allegations in their complaint that mention their

2    FRAND's obligations.  I don't think they are relevant to the

3    substance of the complaint, your Honor, but for completeness we

4    directed discovery requests to them and they objected to them

5    as irrelevant, your Honor.  They objected in the MDA case on

6    relevance grounds.

7             THE COURT:  But you dispute that?

8             MR. STRAUS:  I don't think FRAND obligations are

9    relevant to the determination of the MDA.

10            THE COURT:  You are willing to withdraw all of those

11   document requests; is that right?

12            MR. STRAUS:  Again, all those documents requests, all

13   the ones that they have cited -- I think there were 11 of

14   them -- don't even mention or relate to FRAND.

15            THE COURT:  My questions with a simple one.  You are

16   willing to withdraw them here and now or you are not.  What is

17   the answer?

18            MR. STRAUS:  The ones that actually relate to FRAND,

19   your Honor, I would withdraw.

20            THE COURT:  So the answer is some yes and some no?

21            MR. STRAUS:  Yes, your Honor.  To be clear the ones

22   that I said no on, we don't see it relating to FRAND at all.  I

23   don't know why plaintiffs cited them as overlapping.  We don't

24   see them as overlapping or related to FRAND on their face.

25   They go to the issue of us grappling and trying to get our arms

Ef47vric

1   around them rather than any harm is ultimately related to

2   disclosure in the MDA case.  We don't believe there is, but we

3   don't see what they have to do with FRAND.

4           THE COURT:  So the document requests that you are

5   willing to withdraw are which ones?

6           MR. STRAUS:  Again, your Honor, we withdraw them for

7   purposes of the MDA case.  We haven't gone to see discovery in

8   the FRAND case yet to be clear.  They may well be relevant in

9   that case depending on where that case goes.

10          THE COURT:  We can do multiple documents.  Tell me,

11  please.

12          MR. STRAUS:  So there is request 27, which again

13  relates to --

14          THE COURT:  I just need numbers, please.  You are

15  withdrawing 27.  Any others?

16          MR. STRAUS:  One moment, your Honor.

17          (Pause)

18          MR. STRAUS:  No. 25, your Honor.

19          THE COURT:  That's it?

20          MR. STRAUS:  Correct.

21          THE COURT:  You are not willing to withdraw 17, 23,

22  24, 26, 28 to 30, 37 and 38?

23          MR. STRAUS:  That's correct, your Honor.  We also

24  don't think they relate to the FRAND case.

25          THE COURT:  I understand your point.  Anything else

Ef47vric

1    you would like to raise?

2              MR. STRAUS:  No.  Thank you, your Honor.

3              THE COURT:  Thank you.

4              Mr. Greercken, what about two things:  The question of

5    whether these remaining document requests in the MDA case are

6    relevant also to the FRAND case and secondly the business about

7    the retention of the documents in the United States?  What do

8    you have to say on those?

9              MR. GEERCKEN:  Thank you, your Honor.  We believe that

10   the other requests as we pointed out in our letter do indeed

11   relate to the FRAND case.  Both cases are similar in the sense

12   that they both arise out of FRAND negotiations and they are

13   similar issues about what this Court has the power to do in

14   terms of effecting foreign litigants and foreign litigations.

15   So we believe that the two cases are similar enough.  And

16   certainly your point about efficiency in the discovery process

17   is well taken and we suspect that anything that will be

18   withdrawn in the MDA case will be reasserted in the new action

19   before your Honor and this is just part of an effort to slow

20   the process down and candidly force Vringo to expend more

21   resources.  So that is what I have to say about the

22   consolidation issue, your Honor.

23             With respect to the protective order issue, we

24   envision protective order with a vast majority of the documents

25   would either be nonconfidential or just at a confidential

Ef47vric

1    level.  We have alerted the Court.  We will not talk about it

2    in open court, but we have alerted your Honor to an

3    investigation that is ongoing in China and there are concerns

4    on Vringo's part about the use of certain information that may

5    be made of disclosed information in this case in the foreign

6    investigation.  As a result we have suggested that there be two

7    other tiers of confidentiality that allow attorneys, outside

8    attorneys, inside attorneys and for one level decision-makers

9    within the business to view this midlevel of confidential

10   documents on a computer housed in the United States, wherever

11   they would like in the United States.  They have a subsidiary

12   in Texas if they would like to set that up at counsel's office

13   in Texas.  We think that is absolutely fine.  We could envision

14   a higher level of confidentiality that would just be accessible

15   to outside attorneys and in-house counsel for respected parties

16   on this terminal.  I want to make clear, your Honor, we believe

17   this would be only a small, a very small subset of documents

18   that would be produced in this case.

19          THE COURT:  What is it you are proposing, that the

20   physical documents not leave the United States or that digital

21   images of the documents not leave the United States?  What are

22   you talking about?

23          MR. GEERCKEN:  Well, what we're talking about is

24   having them only accessible at counsel's office anywhere in the

25   United States on a computer terminal or on a computer screen.

Ef47vric

1          THE COURT:  Subject to an order that digital images

2     not be transmitted outside the United States?

3          MR. GEERCKEN:  That's correct, your Honor.

4          THE COURT:  How are you going to police that?

5          MR. GEERCKEN:  The way most confidentiality and

6     protective orders are policed, we know that both sides have

7     officers of the court and the way to police it would be to

8     ensure that it would be at counsel's office or a local counsel

9     of either outside attorneys.

10          THE COURT:  Separated by an airgap from the Internet?

11          MR. GEERCKEN:  That's possible as well, your Honor.

12          THE COURT:  Well, I understand it is possible.  If the

13    degree of thinking hasn't gotten that far, I don't know what

14    we're really talking about here.

15          MR. GEERCKEN:  I think Ms. Wessels was nodding and

16    indicating that is indeed what we have in mind.

17          THE COURT:  Assuming I went along with this, would

18    counsel on the other side have the ability to have images of

19    those documents or the substance of those documents on other

20    computers that weren't protected by an airgap?

21          MR. GEERCKEN:  Why don't you come up, Ms. Wessels, and

22    address that.

23          If it please the Court, Ms. Wessels is a little bit

24    more familiar with that issue and I will let her address it.

25          THE COURT:  Sure.

Ef47vric

1              MS. WESSELS-YEN:  Your Honor, the idea is that the

2        documents subject to the U.S. only conditions would be

3        maintained on a standalone terminal in outside counsel's office

4        without connection to the Internet and without connection to a

5        printer and without USB ports or other ways to electronically

6        transfer documents.  Upon request from U.S. counsel for the

7        receiving party, the producing party would be willing to print

8        selected documents.  It would be printed on colored paper.  It

9        would be printed with the date of the printing and with the

10       name of the requesting counsel.  In this way we would still

11       really keep a tight control of the documents that outside

12       counsel could use for their preparation of the case.

13              THE COURT:  Thank you.

14              Now, Mr. Straus, the reason for this extraordinary

15       protection is simply the investigation; is that right?

16              I misspoke.

17              Mr. Greercken.

18              MR. GEERCKEN:  Yes.  That's correct, your Honor.  We

19       can get into the reasons why we think the extraordinary

20       protection is required.  Part of it is based on recent events

21       that occurred in China.  Again, a part of it is there has been

22       a pattern here where our confidential MDA protective material

23       has been misused.  We are concerned about further misuse of

24       that.

25              THE COURT:  Do the Chinese authorities under their

Ef47vric

1    domestic law have the ability to seek the assistance of the

2    U.S. and U.S. courts in obtaining evidence for this

3    investigation from people in America?

4              MR. GEERCKEN:  I suspect they would pursuant to 28,

5    U.S.C., 1782, your Honor.

6              THE COURT:  That's an interesting idea.

7              Well, I think on this point you both should submit at

8    the same time you submit the protective order -- and if it

9    takes one more day, it will take one more day -- letter briefs

10   discussing this.  The fundamental problem I guess that you're

11   articulating is that if this material goes into China, it's

12   beyond your control.  Indeed, you will not even know where it

13   went and there will be no practical way of finding out.

14   Assuming that the information was of such sensitivity or

15   otherwise shouldn't be subjected to that risk, maybe there is a

16   justification for doing that but I will be very reluctant to do

17   that I think.  If would foreclose that the Chinese government

18   from pursuing a governmental function.  At least in the first

19   instance one has to assume it was taken in good faith and

20   appropriately.  If in fact there is an ultimate mechanism for

21   the Chinese government to seek that information here, that

22   might have a considerable bearing on what I conclude on this

23   issue if you follow me.

24             MR. GEERCKEN:  Yes, I do, and I believe there is.  I

25   believe the statute is pretty broad, your Honor.  I know you've

1    seen it and litigated that issue many times.

2             THE COURT:  I have a little experience with 1782.

3    Just a bit.

4             Anything else on counsel's agenda before we get to

5    what is left of mine?

6             MR. GEERCKEN:  That's what we had on our agenda.

7    Thank you, your Honor.

8             THE COURT:  Mr. Straus, anything else on yours?

9             MR. STRAUS:  I am sorry, your Honor?

10            THE COURT:  Anything else on your agenda for this

11   morning?

12            MR. STRAUS:  No, your Honor.  I would just say on the

13   last item that we're not aware of any documents that rise to

14   the level of sensitivity and reserve the right to object of

15   course to the designee of any particular documents to fall

16   within the category that Mr. Greercken was discussing.

17            THE COURT:  Well, sure, I understand.  I assume that

18   is what your draft order will say; right?

19            MR. STRAUS:  Yes, your Honor.

20            THE COURT:  So I am going to consolidate the cases for

21   discovery purposes.  If anybody seeks a further consolidation,

22   you can make a motion; but it seems to me for present purposes

23   that is sufficient.  So far as an amendment to the pleadings,

24   and I gather really that it is a supplement complaint that

25   we're talking about, and perhaps not, putting aside the

1    question of legal sufficiency, which is available on a motion

2    to amend, Mr. Straus, is there any reason why if they want to

3    amend their complaint they shouldn't be allowed to do it, amend

4    or supplement?

5          MR. STRAUS:  Your Honor, other than the fact that we

6    have not yet seen the proposed amended complaint and the first

7    we learned about their willingness to do that is in the letter

8    so we don't know exactly what it would include, I guess this

9    may fall within legal sufficiency but I would say that we're

10   unaware of anything that would require or justify that at this

11   point.  In other words, the thing that they raised had to do

12   with disclosure to the MDRC.  There is nothing that they have

13   identified that is really in a different category from what

14   they have already alleged substantially.

15         THE COURT:  So what?  So maybe if they amend or

16   supplement and make such an assertion, you will win.  Is there

17   any reason why they should not be allowed to make the claim?

18         MR. STRAUS:  As I said, your Honor, I have not seen

19   the proposed amending pleading or a motion or their grounds for

20   it.

21         THE COURT:  Well, plaintiff can make its motion if it

22   needs to; but except in the rarest of circumstances, there is

23   really no good point to putting anybody to the burden of making

24   a motion for leave to amend unless there is bad faith or any of

25   the other unusual circumstances.  If the argument is only going

Ef47vric

1      to be, Well, they don't have a good claim, the time for that is

2      later.  So I would anticipate a reasonable likelihood that if

3      they want leave to amend then it will be stipulated to without

4      prejudice to whatever your defenses are.

5              MR. STRAUS:  Again, it is hard to stipulate without

6      having seen the pleading.

7              THE COURT:  Well, yes, I understand.  That is why I am

8      not asking you now to stipulate to it.  I am expecting it.

9              Now, the last thing on my list is this:  The amended

10     complaint now contains, among other things, the cause of action

11     asserting that ZTE defrauded Vringo in connection with the

12     procurement of the MDA and the disclosure that was made at the

13     meeting that was contemplated by that.  My question to

14     Mr. Greercken is whether you are relying on that allegation in

15     support of the pending preliminary motion and if so whether

16     there needs to be any briefing, submission of any further

17     evidence or a hearing because I think that allegation was first

18     made after the motion was before me.

19             MR. GEERCKEN:  Thank you, your Honor.  I apologize for

20     taking a moment there.  We believe that the Court has the facts

21     before it to make a determination on the preliminary injunction

22     motion.  So it is not necessary we believe that the fraudulent

23     inducement count be considered along with it.

24             THE COURT:  Thank you.  I will enter an order with

25     respect to the schedule and the consolidation for discovery

Ef47vric

1   purposes.  Henceforth, I earnestly urge upon you a more

2   cooperative and less contentious approach all around to this

3   litigation.  I know it is part of a worldwide litigation

4   festival.  That is true.  I am sure that feelings run very high

5   especially among clients and perhaps among lawyers.  My

6   perception is that very little constructive has occurred

7   between counsel in this case.  There has been some legal

8   positions taken that I regard as borderline frivolous if not

9   worse and it is time to stop before I have to start taking

10   steps to stop it.  I rather not do that.

11        You are both from distinguished firms and I expect you

12   to get along in a professional way.  Now, I don't know if you

13   holler at each other or call each other names.  That is not

14   what I am talking about.  You are professionals and there are

15   bona fide disputes between the parties and let's get to the

16   core of them and get them resolved.  Let's not bicker over

17   nonsense.

18        I thank you.

19                              o0o

20

21

22

23

24

25