UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
VRINGO, INC., et ano.,

                Plaintiffs,


           -against-                          14-cv-4988 (LAK)


ZTE CORPORATION, et ano.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


                Appearances:

                        Karl Geercken
                        Amber Wessels-Yen
                        ALSTON & BIRD LLP
                        *Attorneys for Plaintiff*

                        Paul A. Straus
                        Robert F. Perry
                        KING & SPALDING LLP
                        *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        This action arises out of a non-disclosure agreement ("NDA") between Vringo, Inc.

and another (collectively, "Vringo") and ZTE Corporation and another (collectively, "ZTE") for the

purpose of exploring a potential settlement of worldwide patent infringement litigation. The

complaint alleges, among other things, that ZTE disclosed confidential information in breach of the

NDA. The matter now is before the Court on Vringo's motion for a preliminary injunction.

*Facts*

*The Parties and the Worldwide Patent Infringement Litigation*

Vringo is engaged in the innovation, development, and monetization of intellectual property and mobile technologies.   It holds an intellectual property portfolio of more than 600 patents and patent applications covering telecommunications infrastructure, internet search, and mobile technologies.[1]

In August 2012, Vringo purchased a patent portfolio from Nokia Corporation, including at least several patents that have been declared essential to wireless communications standards and are therefore necessary for the operation of telecommunications equipment.[2]   The parties agree that Vringo must grant licenses to practice those essential patents on fair, reasonable, and nondiscriminatory ("FRAND") terms and conditions.[3]

ZTE, headquartered in Shenzhen, China, designs, develops, manufactures, and sells telecommunications products and equipment.[4]   It claims to be one of the five largest smartphone manufacturers in China and one of the ten largest worldwide.[5]

----

[1]   Berger Decl. [DI 5] (hereinafter "Berger Decl. I") ¶ 3.

[2]   First Am. Cpt. [DI 52] (hereinafter "FAC") ¶ 14; Wang Decl. [DI 16] ¶ 3.

[3]   FAC ¶¶ 15-16; Wang Decl. ¶ 4.

[4]   Wang Decl. ¶ 2.

[5]   *Id.*

ZTE allegedly has been selling telecommunications equipment covered by Vringo's patents without a license for several years.[6]  Beginning in October 2012, Vringo initiated patent infringement litigation against ZTE in Australia, Brazil, France, Germany, India, Malaysia, the Netherlands, Romania, Spain, and the United Kingdom, perhaps among other places.[7]

*The Non-Disclosure Agreement*

In late 2013, ZTE and Vringo agreed to meet to discuss possible settlement of the international patent litigation.[8]  Vringo believed that the "only way to create an environment for productive discussions with good faith settlement offers was . . . to exchange information setting forth the parties' respective positions" pursuant to a non-disclosure agreement ("NDA").[9]  Accordingly, on November 26, 2013, Vringo sent a proposed NDA to ZTE.[10]  ZTE returned it to Vringo on December 9, 2013, signed and initialed by ZTE's chief intellectual property counsel and dated effective as of December 6, 2013.[11]  It was signed and initialed also by Vringo's chief operating officer.

---

[6]     FAC ¶¶ 18-19; Berger Decl. [DI 24] (hereinafter "Berger Decl. II") ¶ 4; *see also* Wang Decl. ¶ 5.

[7]     Berger Decl. II ¶ 4; Wang Decl. ¶¶ 5, 7.

[8]     Berger Decl. II ¶ 5; Wang Decl. ¶ 5.

[9]     Berger Decl. I ¶ 4; *see also* Wang Decl. ¶ 5.

[10]     Berger Decl. II ¶ 7.

[11]     *Id.* ¶ 10; Wang Decl. ¶ 5.

As spelled out in the formal agreement, the NDA served to allow Vringo and ZTE "to explore a potential settlement of some portion of or all of the outstanding litigation as well as any other disputes."[12]  It specified that "any and all statements made, positions taken, or documents used or exchanged by either Party during the course of the Discussions" constituted "Confidential Information."  It detailed also an agreement that no party would use Confidential Information "in any existing or future judicial or arbitration proceedings" or "for [their] commercial advantage, dispute advantage, or any other purpose."[13]  In relevant part, paragraph 2 of the NDA provided:

> "In order to facilitate the Discussions, the Parties hereby agree . . . that any and all statements made, positions taken, or documents used in or exchanged by either Party during the course of the Discussions ('Confidential Information') *shall be confidential, inadmissible, and without prejudice and shall not be used or referenced in any way by any Party in any existing or future judicial or arbitration proceedings or made the subject of any public comment or press release.*  In addition, each Party agrees not to disclose information covered by this Agreement to any of its personnel or representatives except on a strictly 'need to know' basis, or to any third party, and *not to use such information for its commercial advantage, dispute advantage, or any other purpose. . . .* Each Party further agrees that it will take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized hereunder to have any such information."[14]

The NDA contemplated the possibility that a governmental entity or another stranger to the agreement might seek access to Confidential Information.  In the event that one of the parties received a request for such information from a governmental entity or a third party, whether via a discovery request or a subpoena, the NDA provided that the recipient must (i) "maintain the

---

[12] FAC Ex. A [DI 52-1] (hereinafter "NDA") ¶ 1.

[13] *Id*. ¶ 2

[14] *Id*. (emphasis added).

confidentiality of the Confidential Information;" (ii) "timely seek a protective order . . . that would afford the Confidential Information the highest level of confidential treatment possible;" and (iii) "notify the other Party within three business days of receiving the initial request for Confidential Information."[15]

The NDA stated also "that money damages may not be a sufficient remedy for any breach of this Agreement and that, in addition to all other remedies to which it may be entitled, the Parties will be entitled to seek equitable relief, including injunction and specific performance, for any actual or threatened breach of the provisions of this Agreement."[16] Finally, the NDA was to "be governed by and construed and enforced in accordance with the laws of the State of New York" and "binding upon the parties hereto in the United States and worldwide."[17]

*The Settlement Meeting*

The parties met on December 10, 2013 – the day after ZTE returned the executed NDA to Vringo – to discuss a possible resolution of the patent litigation.[18]  Vringo there made a 40-page presentation to ZTE, which, among other things, included its settlement proposal.[19]  Each and

---

[15]  *Id*. ¶ 3.

[16]  *Id*. ¶ 10.

[17]  *Id*. ¶ 12.

[18]  Berger Decl. II ¶ 11; Wang Decl. ¶ 6.

[19]  Berger Decl. I ¶ 6.

6

every page of the presentation stated: "CONFIDENTIAL - VRINGO/ZTE SETTLEMENT DISCUSSIONS SUBJECT TO NDA."[20]   But no settlement was reached.

*Chinese Litigation*

On February 21, 2014, ZTE initiated an antitrust lawsuit in Shenzhen, China, claiming that Vringo had abused its market position by refusing to license its essential patents on FRAND terms and conditions.[21]   ZTE's complaint – filed just over two months after ZTE executed the NDA – specifically relied on Vringo's Confidential Information.  It stated: "In the second price quotation in December 2013, the Defendant [Vringo] actually intended to charge the Plaintiff USD [Redacted] for its standard-essential patents' portfolio license . . . ."[22]   Moreover, ZTE attached Vringo's December 10, 2013 presentation as an exhibit to the complaint itself.[23]

Vringo long remained entirely unaware of the Shenzhen litigation.  It was not until June 26, 2014 – more than four months after the lawsuit was initiated – that it received a copy of the

---

[20]

      *Id.*

[21]

      Wang Decl. ¶ 10; Berger Decl. I ¶ 10; FAC ¶ 41.

[22]

      FAC Ex. D (Shenzhen Complaint) [DI 52-4] at 6-7; Berger Decl. I ¶ 7.

      Vringo redacted the Confidential Information from the documents filed before this Court, but it was not redacted in the complaint filed with the Shenzhen court.  *See* FAC ¶ 45 n.2.

[23]

      *See* Berger Decl. I ¶¶ 8-9; *see also* FAC Ex. C (Dec. 10, 2013 Presentation) [DI 52-3]; FAC Ex. E (Shenzhen Evidence List Provided by ZTE) [DI 52-5].

complaint and supporting documents from the Shenzhen court on its own initiative and learned that ZTE had disclosed Confidential Information in its Shenzhen filing.[24]

*European Commission Litigation*

On April 10, 2014, ZTE filed another complaint against Vringo, on that occasion with the European Commission ("EC").[25]  Vringo received a copy of the complaint on May 15, 2014 from the EC with the opportunity to respond.[26]  As mentioned, Vringo then still was entirely unaware of the Shenzhen litigation.  So, on June 4, 2014, Vringo requested "a waiver from ZTE to allow Vringo to disclose any information that constitutes Confidential Information (as defined in clause 2 of the Vringo/ZTE Non-Disclosure Agreement) to the European Commission in connection with ZTE's complaint."[27]  ZTE did not respond before Vringo was required to answer the EC complaint.[28]  Consistent with its obligations under the NDA, Vringo redacted any Confidential Information from its EC response.[29]

---

[24]

Berger Decl. I ¶¶ 7-10.

[25]

Berger Decl. II ¶ 13.

[26]

*Id*. ¶¶ 13-14; Chappatte Decl. [DI 28] ¶ 4.

[27]

Wang Decl. Ex. A (Ltr. from A. Berger, Vringo, to S. Jianfeng, ZTE (June 4, 2014)); Berger Decl. II ¶ 14.

[28]

Chappatte Decl. ¶ 6; Berger Decl. II ¶ 15.

[29]

Chappatte Decl. ¶¶ 6, 9, 11-13.

On June 24, 2014, a week after Vringo's EC submission, ZTE responded to Vringo's letter.[30]  ZTE wrote that it "considered [Vringo's] request to waive clause 2 of the Non-Disclosure Agreement concluded between ZTE and Vringo on 6 December 2013 ('the NDA')" and could "only agree to such a waiver under . . . two conditions."[31]  *First*, "[t]he waiver should be made reciprocal, meaning that Vringo, Inc. . . .should also waive the confidentiality obligations under the NDA on ZTE Corporation."[32]  *Second*, "the reciprocal confidentiality waiver only concerns the information exchanged under the NDA that is of direct relevance to the complaint ZTE has filed with the European Commission in April 2014."[33]  In other words, ZTE took the position that the NDA remained in force and in effect, that disclosure to the EC was permitted only by written agreement, and that Vringo could disclose Confidential Information to the EC only if it permitted ZTE to do so.

*NDRC Investigation*

On January 13, 2015, Vringo received a letter from the Bureau of Price Supervision and Anti-Monopoly of China's National Development and Reform Commission ("NDRC") stating that the NDRC had initiated an investigation after "receiv[ing] a claim that your corporation has violated 'Anti-Monopoly Law of P.R. China.'"[34]  The following week, the NDRC informed Vringo

---

[30]

Wang Decl. Ex. C (Ltr. from S. Jianfeng, ZTE, to A. Berger, Vringo (June 24, 2014)) [DI 16-3].

[31]

*Id*.

[32]

*Id*.

[33]

*Id*.

[34]

Ltr. from L. Jian, NDRC, to A. Berger, Vringo (Jan. 12, 2015) [DI 76-1].

that its investigation was "based on complaints which contain prima fac[i]e evidence of . . . anti-competitive behavior of your company."[35]   While discovery remains ongoing, ZTE now has admitted that it "submitted the December 10, 2013 presentation to the NDRC in or about April 2014."[36]

*This Action*

   Vringo commenced this action on July 2, 2014 for breach of the NDA, and moved by order to show cause for a temporary restraining order ("TRO") and a preliminary injunction on July 3, 2014.   Vringo sought injunctive relief (1) requiring that ZTE withdraw the Shenzhen complaint and all of its supporting documentation, (2) enjoining ZTE from any further litigation in Shenzhen or any other court in the Guangdong Province of China regarding the same or similar claims, (3) requiring that ZTE withdraw any Confidential Information provided to any other court or tribunal and notify Vringo of any such circumstances, and (4) enjoining ZTE from referencing any Confidential Information in any pending or future litigation.

   Following argument on July 7, 2014, the Court granted a TRO much more limited than the one Vringo had sought.   It restrained ZTE "from using, referencing, or disclosing any

---

[35]   E-mail from L. Jian, NDRC, to D. Cohen, Vringo (Jan. 21, 2015) [DI 78-1].

[36]   *See* Mot. for Sanctions [DI 111], Ex. A at 4 (under seal).

Confidential Information, as defined in Paragraph 2 of the [NDA]. . . in any manner inconsistent with the terms of that [NDA]."[37]   By agreement of the parties, the TRO has remained in effect.[38]

Vringo filed an amended complaint on August 13, 2014, asserting additional claims for fraudulent inducement, breach of the implied covenant of good faith and fair dealing, and unfair competition.   The amended complaint alleges that ZTE executed the NDA to elicit the Confidential Information only to use it for its commercial advantage in the Shenzhen lawsuit, perhaps among other places.   Vringo, however, does not rely on this allegation in its motion for a preliminary injunction.[39]

On April 6, 2015, the Court granted Vringo's motion for partial judgment on the pleadings to the extent that it determined that the parties entered into the NDA and that ZTE's actions in disclosing the Confidential Information breached its obligations under the NDA.[40]   That same day, the Court granted ZTE's motion for judgment on the pleadings to the extent that it dismissed Vringo's unfair competition claim but denied the ZTE motion in all other respects.[41]

---

[37]   TRO (July 9, 2014) [DI 13]; *see also* Tr., July 7, 2014, at 26:17-24.

[38]   DI 13 at 2.

[39]   Tr., Apr. 7, 2015, at 21:9-23.

[40]   *See* Order (Apr. 6, 2015) [DI 91].

[41]   *See* Order (Apr. 6, 2015) [DI 90].

*Discussion*

I.     *Preliminary Injunction Standard*

In the Second Circuit, a litigant seeking a preliminary injunction must:

> "either show that he is likely to succeed on the merits; that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest, *Winter v. NRDC*, 555 U.S. 7, 20, 129 S.Ct 365, 172 L.Ed.2d 249 (2008); or he may show irreparable harm and either a likelihood of success on the merits or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief,' *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)."[42]

The Court applies the *Winter* standard here because, as will be seen, Vringo has shown an exceptionally high likelihood of success on the merits and the Court therefore need not examine the 'serious questions' standard.

Additionally, where, as here, a party seeks a preliminary injunction that is "mandatory," *i.e.*, "alter[s] the *status quo* by commanding some positive act," a heightened showing is necessary.[43]  In this Circuit, "a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."[44]

---

[42]      *ACLU v. Clapper*, --- F.3d ----, 2015 WL 2097814, at *32 (2d Cir. May 7, 2015).

[43]      *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).

[44]      *Id*. (internal quotation marks and citation omitted); *accord Cacchillo v. Insmed, Inc*., 638 F.3d 401, 406 (2d Cir. 2011).

II.     *Likelihood of Success on the Merits*

  A.     *ZTE Violated the Unmistakably Clear Terms of the NDA*

    Not very much need be said with respect to ZTE's violation of the terms of the NDA. This Court already has found that "the pleadings establish the existence and terms of the NDA and defendants breach thereof."[45]

    Nonetheless, a few points warrant elaboration.

    *First*, paragraph 2 of the NDA defined "Confidential Information" as "any and all statements made, positions taken or documents used or exchanged by either Party during the course of the Discussions."[46] Vringo's December 10, 2013 presentation – both the written presentation and the discussion that occurred at the meeting – clearly and unmistakably was Confidential Information under the NDA.   Moreover, bold lettering on each and every page of the written presentation identified it as such: "Confidential - Vringo/ZTE Settlement Discussions Subject to NDA."[47]

    *Second*, the NDA clearly and unmistakably prohibited ZTE's disclosure of this Confidential Information.  The NDA expressly provided that such Confidential Information "shall not be used or referenced in any way by any Party *in any existing or future judicial or arbitration proceeding*."[48] Yet ZTE voluntarily disclosed Confidential Information when it initiated the judicial proceeding in China a mere two months after agreeing not to use or reference such information.,

---

[45]  DI 91 at 1.

[46]  NDA ¶ 2.

[47]  Berger Decl. I ¶¶ 6, 9.

[48]  NDA ¶ 2 (emphasis added).

even in judicial proceedings.  Indeed, ZTE itself admitted that it "included certain materials relating to the December 2013 meeting between the parties" in the Shenzhen complaint.[49]

ZTE nonetheless argues that non-disclosure agreements typically are concluded to prevent parties from disclosing settlement information in contravention of Federal Rule of Evidence 408, not to prevent all use in judicial proceedings of settlement-related information.[50] Even if that were true in general, it would not matter here because these parties agreed in the NDA that the disclosure of Confidential Information *in judicial proceedings* was prohibited with an exception not relevant here.[51]  Had the intention been merely to foreclose disclosure of statements made in settlement discussions to the extent provided by Rule 408, ZTE's chief intellectual property counsel, as an executive of one of the five largest smartphone manufacturers in China and one of the ten largest worldwide, easily could have proposed such language in the NDA.  He did not.[52]

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."[53]  The NDA was clear and unambiguous, and ZTE unmistakably violated its terms.

---

[49]
Wang Decl. ¶ 11.

[50]
Tr., July 7, 2014, at 6:15-22; 35:10-12.

Rule 408 provides that "conduct or a statement made during compromise negotiations about the claim" "is not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."

[51]
The qualification refers to the limited exception referred to previously for disclosure pursuant to compulsory process.

[52]
*See* Berger Decl. II ¶ 10.

[53]
*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002).

*Third*, ZTE's conduct in relation to the EC litigation confirms that ZTE was very well aware that the NDA prohibited disclosure, even in judicial proceedings.[54]  As described above, Vringo sought ZTE's written permission to disclose certain Confidential Information to the EC when responding to ZTE's complaint to the EC.  Of course, unbeknownst to Vringo, ZTE already had filed its Shenzhen complaint with Vringo's Confidential Information by that time.  Had ZTE believed that it was permissible to disclose Confidential Information for purposes other than those prohibited by Rule 408, it could have so responded.  Instead, it chose to wait until after Vringo was required to submit a response to the EC and then to condition Vringo's disclosure on a reciprocal waiver despite the fact that ZTE already had disclosed Confidential Information in another action.[55]

B.     *The NDA's Confidentiality Provision Is Enforceable*

ZTE voluntarily executed the NDA and agreed not to use any Confidential Information in any existing or future judicial proceeding.  It then met with Vringo, ostensibly for the purpose of discussing settlement, and obtained Confidential Information.  Within weeks, it then voluntarily sued Vringo in Shenzhen and disclosed the Confidential Information it thus elicited in

---

[54]     The Court's finding on this issue, like all findings at this stage, is provisional only and may change in light of future evidence.

[55]     Though it is not necessary to the resolution of this motion, the Court notes that ZTE may have sought by its gambit to obtain immunity for its breach of the NDA in the Shenzhen action.  ZTE requested a reciprocal waiver for information exchanged under the NDA "that is of direct relevance to the complaint ZTE has filed with the European Commission."  DI 16-3.  Both the settlement offer and presentation that ZTE already had disclosed to the Shenzhen court fit that description.  In other words, ZTE appears to have taken advantage of Vringo's lack of awareness of the Shenzhen lawsuit and attempted to obtain a waiver that arguably could have provided ZTE immunity for its disclosure of the Confidential Information to the Shenzhen court.  In any case, its actions suggest awareness of the wrongfulness of its conduct.

blatant violation of the NDA.  It now contends that its conduct nonetheless was permissible on two principal grounds: that (1) Chinese law supposedly required it to disclose the Confidential Information, and (2) the NDA in any case is a contract to suppress evidence that is unenforceable under New York law.  Both arguments are entirely without merit.

*First*, ZTE argues that Chinese law should govern the interpretation of the NDA and conclusorily claims that "under Chinese law an NDA cannot . . . prevent a party from submitting relevant evidence to a court *as they are legally required*."[56]  The argument is frivolous.

To begin with, ZTE does not – and could not – claim that Chinese or any other law *required* it to bring its private lawsuit against Vringo.  If in fact Chinese law would have required disclosure of Confidential Information in any such complaint, ZTE could have complied with Chinese law by not filing the action.  That course certainly was open to it, and ZTE would have been bound to follow it if that were the only means of discharging the obligation of confidentiality it voluntarily assumed by signing the NDA.  In any case, however, there is no persuasive reason to assume that ZTE was faced with such a stark choice.

There is no basis for concluding that ZTE was legally required by Chinese law to disclose the Confidential Information in and with the complaint that it voluntary filed against Vringo.  ZTE relies on the declaration of Jianjun Cao, a partner of the Guanghe Law Firm in Guangdong, China, which states that "Chinese law requires proof to be filed with ZTE's complain[t]."[57]  But Mr. Cao quite obviously did not claim that Chinese law requires the submission of any and all evidence, no matter the source or its confidentiality.  Indeed, Mr. Cao relies on Article

---

[56]    ZTE Mem. of Law in Opp'n. to Mot. for Prelim. Inj. [DI 14], at 21 (emphasis added).

[57]    Cao Decl. [DI 15] ¶ 5.

121 of the Chinese Civil Procedure Law, the entirety of which states that a statement of claim must specify the parties' names, genders, ages, etc., "the claim and its supporting facts and grounds," and "evidence and the source thereof."[58]   ZTE's suggestion that this basic procedural requirement obligated it to submit to the Shenzhen court Confidential Information which it explicitly had agreed not to use in any future judicial proceeding is nothing more than gamesmanship.

Vringo submitted a declaration from Douglas Clark, a barrister of the High Court of Hong Kong, who has handled, with the assistance of local counsel, hundreds of cases in the People's Republic of China, and written a treatise on patent litigation in China.[59]   Mr. Clark explained that "a party has freedom to choose what evidence they file" and "there is no obligation to file all the evidence the Plaintiff relies upon when they file the case."[60]   Thus, ZTE's premise that it was obligated under Chinese law to submit the Confidential Information – even assuming that Chinese law applied – is grotesquely overbroad.

But even if we assume *arguendo* that Chinese law clearly and unambiguously required the submission of such evidence, that would not be the end of the matter.   As "[a] federal court sitting in diversity jurisdiction," the Court must "apply the law of the forum state to determine the choice-of-law."[61]   Generally, "[u]nder New York law . . . a contract's designation of the law that is to govern disputes arising from the contract . . . is determinative if the state selected has sufficient

---

58

       *See* Cao Decl. Ex. A (Civil Procedure Law of the People's Republic of China) [DI 15-1], Art. 121.

59

       Clark Decl. [DI 6] ¶¶ 1, 2.

60

       Clark Decl. [DI 25] ¶ 9.

61

       *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).

contacts with the transaction."[62]   The location of a party's principal place of business is significant and generally suffices on its own to establish sufficient contacts for purposes of New York's choice of law analysis.[63]

There are more than sufficient contacts with New York to enforce the parties' designation that the NDA "shall be governed by and construed and enforced in accordance with the laws of the State of New York."[64]   Vringo maintains its principal place of business in New York and sought protection under its laws when entering into the NDA.[65]   ZTE knew this, executed the NDA, and then sent it back to Vringo in New York.[66]   The parties, in agreeing to have the law of New York govern their contract, selected the laws of a State that has a reasonable relationship and significant contacts to the contract and that choice must be enforced by this Court.

*Second*, ZTE argues that the NDA is unenforceable under New York law because it constitutes an agreement to suppress evidence.  The NDA, however, is merely an agreement between

---

[62]

*Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984) (citations omitted); *see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines*, 230 F.3d 549, 556 (2d Cir. 2000) ("New York law is clear [that] in cases involving a contract with an express choice-of-law provision . . . a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").

[63]

*See Finucane v. Interior Constr. Corp.*, 264 A.D.2d 618, 620, 695 N.Y.S.2d 322, 325 (1st Dept. 1999); *cf. Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 366 (2d Cir. 2003) (recognizing that "the choice of New York law would be reasonable, and hence enforceable, if [plaintiff's] 'principal place of business' were in New York, creating significant contacts in the state").

[64]

NDA ¶ 12.

[65]

*See* Berger Decl. II ¶ 2.

[66]

*Id*. ¶ 10; Wang Decl. ¶ 5.

two private parties to foreclose the use of certain information in private litigation.   Such an agreement is entirely permissible.

As an initial matter, New York recognizes the strong "public policy of encouraging and facilitating settlement."[67]   Courts therefore routinely have maintained the confidentiality of "documents . . . created specifically and directly as a result of the informal, off-the-record negotiations designed to settle claimant's claim."[68]   There can be no doubt that the NDA was entered into for the explicit purpose of facilitating candid settlement discussions.

Moreover, a private party may release a potential adversary from a private liability so long as it "evince[s] the unmistakable intent of the parties."[69]  And New York law expressly permits covenants not to sue private parties.[70]   ZTE conceded at argument that it could have signed a general release or a covenant not to sue that would have prevented it from bringing a private lawsuit altogether.[71]   The agreement at issue here – to prohibit the parties from using in private litigation certain information obtained during settlement discussions – is considerably less restrictive than either a release or a covenant not to sue.   Accordingly, it would be wholly illogical to conclude

---

[67]

*Crow-Crimmins-Wolff & Munier v. Westchester Cnty.*, 126 A.D.2d 696, 697, 511 N.Y.S.2d 117, 119 (2d Dept. 1987) (recognizing that "observations made for the stated purpose of arriving at a settlement agreement, and expressly not for litigation . . . should likewise generally be protected by the same public policy of encouraging attempts at settlement").

[68]

*E.g.*, *Randall Elec., Inc. v. State*, 150 A.D.2d 875, 876-77, 540 N.Y.S.2d 901, 902 (3d Dept. 1989).

[69]

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2001) (internal quotation marks and citation omitted).

[70]

*Kamfar v. New World Rest. Grp., Inc.*, 347 F. Supp. 2d 38, 50 (S.D.N.Y. 2004).

[71]

Tr., June 7, 2014, at 9:11-24.

that ZTE could agree to settle its patent infringement litigation, or that it could agree not to bring any future litigation, but that it could not agree that it would not disclose settlement-related information in private litigation.

Of course, as a matter of public policy, such an agreement cannot trump compulsory process in a grand jury investigation or in a criminal case, or perhaps in other areas. But the NDA is not an agreement to suppress evidence. Quite the contrary, the NDA explicitly permits disclosure of Confidential Information upon a request from a governmental entity or third party whether by a discovery request or a subpoena.[72] The party in receipt of the request merely is obligated to seek a protective order to afford the information the highest level of confidential treatment possible and to notify the other party.[73] In other words, the NDA specifically contemplates the possibility of disclosure through compulsory process.

Further, the legal authority on which ZTE relies plainly is distinguishable and inapposite. ZTE cites the First Restatement of Contracts for the proposition that a "[a] bargain that has for its object or consideration the suppression of evidence . . . is illegal."[74] But the provision actually reads: "A bargain that has for its object or consideration the suppression of evidence by

---

[72]  NDA ¶ 3 (providing that upon such request the party is obligated to "(i) maintain the confidentiality of the Confidential Information," (ii) "timely seek a protective order or other similar means of protection that would afford the information . . . the highest level of confidential treatment possible (including but not limited to 'attorneys' eyes only' or a similar designation)," and (iii) "notify the other Party within three business days" of the request).

[73]  *Id.*

[74]  DI 14 at 22.

inducing witnesses to leave the State, by the destruction of documents, or otherwise, is illegal."[75] The NDA, of course, as discussed above, does no such thing.

ZTE relies also on *Cronk v. State of New York*,[76] a 1979 decision by the New York Court of Claims.   *Cronk* held that the court could not be preempted from considering a prior property appraisal where the agreement stating otherwise "was not the product of a meeting of the minds," "worked to the prejudice of the claimant[,] and was the product of an unequal bargaining position."[77]   Here, however, the agreement unmistakably was entered for the explicit purpose of furthering settlement discussions, did not work to the prejudice of either party, and was not the product of an unequal bargaining position.

Moreover, *Cronk* specifically recognized that the property appraisal was admissible because it "had been used for purposes other than negotiation and settlement."[78]   At most, therefore, *Cronk* stands for the proposition that parties cannot prevent a court from considering legally competent evidence that has been exchanged or used for non-settlement purposes.   It therefore is distinguishable from the instant case in which the Confidential Information was disclosed for the sole purpose of facilitating a settlement.

---

[75]   RESTATEMENT (FIRST) OF CONTRACTS § 554 (1932).

[76]   100 Misc. 2d 680 (N.Y. Ct. Cl. 1979).

[77]   *Id*. at 683, 687.

[78]   *Id*. at 683.

Finally, ZTE cites *Trustees of Leake & Watts Orphan House v. Hoyle*,[79] a 1913 Westchester County case vastly different from this one.  As an initial matter, that case was unrelated entirely to settlement or to the facilitation of settlement.  Moreover, the court reasoned only that it could not be prevented from examining the terms of the contract itself in an "action between the parties relating to the subject matter of the contract."[80]  That reasoning is neither applicable nor persuasive to the instant case.

In sum, it was entirely lawful for Vringo and ZTE to agree that they would not use information exchanged in settlement discussions in any judicial proceedings.  Vringto is highly likely to prevail on the merits of its breach of contract claim.

### C.    *ZTE Concedes that its Unclean Hands Defense is Inaccurate*

In opposing the preliminary injunction, ZTE argued "[f]irst, and most obviously" that Vringo could not demonstrate a likelihood of success "because, if ZTE breached the NDA with its filing, that would mean plaintiffs themselves breached the same contract by submitting some of the same material to the European Commission."[81]  Zhao Wang, the Senior Licensing Director of ZTE, swore under penalty of perjury, that "in the only version of Vringo's response provided to ZTE, the supposedly confidential information is fully redacted," but "[i]nexplicably, rather than withholding

---

[79]    79 Misc. 301 (N.Y. Sup. Ct. 1913).

[80]    *Id*. at 304.

[81]    DI 14 at 19-20.

22

this information from the tribunal (as it now demands of ZTE), Vringo instead withheld it from ZTE."[82]

But the accusation that Vringo redacted the confidential information in the version sent to ZTE but not in the version filed with the EC was based on a demonstrably and now admittedly false claim.  Vringo redacted the same information in its response to the EC.[83] Accordingly, ZTE withdrew that allegation and any such inferences.[84]

In an attempt to salvage some portion of its unclean hands argument, ZTE nonetheless claims that Vringo's unredacted disclosures to the EC "are substantially similar in kind to the portions of the Shenzhen Complaint concerning 'the substance of the settlement meeting.'"[85] But ZTE has not identified a single disclosure of Confidential Information by Vringo.  Thus, the Court finds that ZTE deliberately violated the terms of the NDA and then – having been caught months later with its hands in the cookie jar – falsely accused Vringo based on no evidentiary support whatsoever.

In these circumstances, Vringo has demonstrated that its likelihood of success on the merits approaches certainty.

---

[82]

Wang Decl. ¶ 14.

[83]

Chappatte Decl. ¶¶ 9, 11-13.

[84]

*See* Ltr. from P. Straus, ZTE, to Court (Aug. 5, 2014) [DI 44].

[85]

*Id*.

III.    *Vringo Is Threatened With Immediate and Irreparable Injury*

Parties seeking preliminary relief must "demonstrate that irreparable injury is likely in the absence of an injunction."[86]  Such injury must be "neither remote nor speculative, but actual and imminent and . . . cannot be remedied by an award of monetary damages."[87]  Accordingly, the irreparable injury requirement is satisfied here if Vringo, in the absence of a preliminary injunction, probably would suffer injury in the future that could not be undone even if it prevails in this action.

---

[86]

*Winter*, 555 U.S. at 22 (citations omitted).

In *Winter*, the Supreme Court held that the "'possibility' standard is too lenient.  Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Id.* (emphasis in original) (citations omitted).  It did not however elaborate as to what level of certainty is required to establish a likelihood of irreparable harm.

In citing *Winter*'s requirement that irreparable injury be *likely* absent an injunction, ZTE goes on to claim that the Second Circuit in *Citigroup Global Markets, Inc. v. VCG Special Opps. Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010), "held that . . . 'likely' means 'a greater than fifty percent probability.'" ZTE Supp. Mem. of Law [DI 40], at 5 n.4.  Again, ZTE has mischaracterized the case law.  The Second Circuit there stated the following: "[W]e take VCG's position to be that the standard articulated by these three Supreme Court cases requires a preliminary injunction movant to demonstrate that it is more likely than not to succeed on its underlying claims, or in other words that a movant must show a greater than fifty percent probability of success on the merits."  *Citigroup*, 598 F.3d at 34-35.  *First*, the statement expressly describes a litigant's position, not that of the Second Circuit.  *Second*, the statement relates to the likelihood of success requirement, not irreparable harm.  *Third*, the statement – even had it been the Second Circuit's view of the likelihood of irreparable harm (which it was not) – would have been *dicta*, not a holding.

The Court has not identified any requirement that threatened irreparable harm be more likely than not.  Nonetheless, there is no need to decide that question because irreparable harm to Vringo is highly likely.

[87]

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995).

*A.  Vringo Is Highly Likely to Suffer Irreparable Injury Absent a Preliminary Injunction*

Vringo is likely to suffer imminent harm absent a preliminary injunction for at least two reasons.

*First*, ZTE has demonstrated that injunctive relief may be the only way to prevent it from disclosing Confidential Information.  ZTE has continued to adhere to the view that "the NDA cannot be read to prohibit submission of competent evidence of an antitrust violation" despite the clear and unequivocal language in the NDA prohibiting such disclosure in private litigation.[88] Nonetheless, ZTE has assured the Court that it "has not shared any confidential materials with any governmental agency, including the NDRC, on or after July 7, 2014, when the TRO went into effect."[89]  In other words, the TRO was the reason that ZTE finally began complying with the clear and unequivocal terms of the NDA.  Absent injunctive relief, it is likely to continue to disclose Confidential Information in violation of the NDA.

*Second,* ZTE's cavalier behavior reinforces the finding of a likelihood of further dissemination of Vringo's Confidential Information absent a preliminary injunction.[90]  ZTE blatantly has disregarded its NDA obligations in at least the following ways:

- A mere two months after signing the NDA, ZTE disregarded completely the obligations it had undertaken and filed a lawsuit against Vringo relying on

---

[88]     ZTE Opp'n. to Mot. to Compel [DI 82] at 4.

[89]     *Id*. at 2.

[90]     *See EEOC v. KarenKim, Inc*., 698 F.3d 92, 100-01 (2d Cir. 2012) (vacating the district court's denial of injunctive relief because the character of past violations rendered it likely that nothing would prevent the recurrence of misconduct absent a permanent injunction).

the Confidential Information it had agreed not to use or mention in any judicial proceeding.

•     ZTE also disseminated the Confidential Information to China's NDRC, perhaps leading to its investigation against Vringo.

•     Despite having no evidence whatsoever, the senior licensing director of ZTE falsely declared under oath that Vringo secretly disclosed Confidential Information to the EC.

The totality of ZTE's conduct evidences a disregard of its obligations so serious as to suggest the likelihood of future breaches of the NDA whenever ZTE, which is enmeshed in worldwide litigation with Vringo, thinks that disclosures in other *fora* or for other purposes would be to its advantage. The Court therefore finds that further disclosure of Vringo's Confidential Information is likely to occur imminently in the absence of a preliminary injunction.

B.     *The Threatened Harm to Vringo Would be Irreparable*

Public disclosure of Vringo's Confidential Information would cause it irreparable injury. Vringo's business depends substantially on the value of its patent portfolio, which it licenses to third parties.[91] The disclosure of Vringo's Confidential Information, including its proposal to settle years of ZTE's alleged patent infringement, would impact the prices others would pay to obtain licenses as well as the prices its competitors would offer for their licenses.[92] Indeed, once such commercially-sensitive information becomes public knowledge, it can "not be made secret

---

[91]    *See* Berger Decl. I ¶ 11.

[92]    *Id.*

again."[93]  In short, the disclosure of that information would have a lasting and immeasurable harm to Vringo's business.

*IV.*      *The Balance of Equities and the Public Interest Favor Appropriate Injunctive Relief*

In considering the equities, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. Additionally, in exercising their sound direction, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[94]  It is helpful to consider the harm that would befall the parties and the public were the ruling on this motion, either way it is decided, ultimately to prove incorrect or inequitable.

If the Court mistakenly were to deny a preliminary injunction, ZTE would continue to disclose and rely on Vringo's Confidential Information in the Shenzhen litigation and likely to other courts and investigatory authorities, such as the NDRC, resulting in the irreparable injury described above.  Vringo entered into the NDA precisely to avoid such a destructive outcome.

On the other hand, ZTE would face no comparable harm if a prohibitory preliminary injunction were granted erroneously.  Enjoining ZTE from further disclosure of Vringo's Confidential Information would prevent ZTE temporarily from referring to the material it agreed

---

[93]

*Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983).

[94]

*Winter*, 555 U.S. at 24 (internal quotation marks and citations omitted).

explicitly not to use in judicial proceedings.[95]  In comparison to the potential harm to Vringo, there simply is no contest.

Finally, the public interest favors appropriate injunctive relief.  The Court recognizes the "need for due regard to principles of international comity" and the importance of issuing anti-suit injunctions "only with care and great restraint."[96] There is no need to belabor the point because, as described in Section V.A, enjoining the proceedings in China is not appropriate at this time.  But prohibitory injunctive relief would not prevent the Shenzhen court from evaluating the antitrust action and therefore would not offend the comity owed to the foreign court.  Moreover, the general public does not have a right to access this material as "the presumption of access to settlement negotiations, draft agreements, and conference statements is negligible to nonexistent."[97]

For these reasons, the balance of equities and the public interest favor appropriate injunctive relief.  That is not to say, however, that Vringo is entitled to a preliminary injunction as broad as it seeks.

---

[95]
    Were the Court erroneously to require ZTE to withdraw its Shenzhen complaint, ZTE would face a delay in its ability to litigate its pending antitrust action against Vringo.  ZTE has not asserted that it would be unable to refile its Shenzhen lawsuit against Vringo after a trial on the merits in this case.  Nonetheless, the Court need not consider seriously this potential harm to ZTE as it separately has determined that an anti-suit injunction would not be appropriate.

[96]
    *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir. 1987) (internal quotation marks and citations omitted).

[97]
    *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998).

V.      *The Scope of the Preliminary Injunction*

      A.      *The Court Will Not Grant an Anti-Suit Injunction*

      Vringo seeks to require ZTE to withdraw its Shenzhen complaint and enjoin it from pursuing the same or similar claims in that court or any other court in the Guangdong Province.

      *China Trade & Development Corp. v. M.V. Choong Yong*[98] and its progeny provide the standard for determining when a court may enjoin parties before it from commencing or pursuing litigation in foreign jurisdictions.  There are two threshold requirements to issuing an anti-suit injunction: (1) the parties in the two litigations must be the same, and (2) resolution of the case before the enjoining court must be dispositive of the actions to be enjoined in the foreign *fora*.[99]  If these conditions are met, the court then must consider whether the injunction would "(1) frustrate a policy in the enjoining forum; (2) be vexatious; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; (4) prejudice other equitable considerations; or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment."[100]

      While the parties agree that the first threshold requirement is met in this case, they disagree regarding the second.  ZTE argues that an anti-suit injunction would be inappropriate because the determination of this action for breach of the NDA would not preclude a decision on ZTE's antitrust claim.[101]  This Court agrees.

---

[98]      837 F.2d 33 (2d Cir. 1987).

[99]      *Id.* at 36; *see also Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007).

[100]      *Karaha Bodas*, 500 F.3d at 119 (alterations, ellipses, internal quotation marks, and citations omitted).

[101]      DI 40, at 2-3.

A decision holding that ZTE breached the NDA would not necessarily foreclose the antitrust action in the Shenzhen court.  Vringo has not demonstrated that ZTE's antitrust claim relies so heavily on the Confidential Information that it necessarily would fail without it.  The fact that "ZTE uses Vringo's highly confidential opening offer as the basis for its claims that the offer constitutes an abuse of power"[102] does not foreclose the possibility that ZTE provided or will provide the Shenzhen court with other evidence and reasons from which it could conclude that Vringo abused its market position in violation of Chinese antitrust laws.  The Court at this stage does not have sufficient evidence to find that resolution of this case would dispose of the antitrust case in Shenzhen, China.  Accordingly, because Vringo has failed to satisfy the second threshold requirement, it is not appropriate to enjoin the Shenzhen action.

B.        *A Prohibitory Injunction Will Sufficiently Protect Vringo*

Vringo requests alternatively that the Court order ZTE to withdraw the Confidential Information from the Shenzhen litigation and to amend its complaint to remove any reference to Confidential Information.

As discussed above, "a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."[103]  This Court carefully has considered the requested relief and concludes that a mandatory injunction is not necessary in this case.  Although Vringo has demonstrated a near certain success on the merits, a strong likelihood of irreparable harm in the

---

[102]     Berger Decl. ¶ 7.

[103]     *Tom Doherty*, 60 F.3d at 34 (internal quotation marks and citation omitted).

absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction would be in the public interest, it has not met the heightened showing to obtain a mandatory injunction.

Vringo likely will suffer irreparable injury from further disclosure of Confidential Information by ZTE or the Shenzhen Court. It therefore is appropriate to prohibit ZTE from any further use or reference of Confidential Information. As for the material already before the Shenzhen court, the parties have requested that the court maintain the confidentiality of all evidence and materials that were submitted, that the hearings not be conducted in public, and that it not publish any decision publicly.[104] There has been no evidence to suggest that the Shenzhen court denied the request or is likely to do so. Accordingly, while a mandatory permanent injunction may prove appropriate after a trial on the merits, such preliminary relief is not necessary at this time.

## VI.   The Bond

Rule 65(c) provides that preliminary injunctions ordinarily should be issued only upon the giving of a bond or other security. In this case, there is no reason to require security as the preliminary injunction merely requires ZTE to abide by the terms of the NDA it entered in December 2013. Moreover, ZTE neither requests a bond nor provides any basis for fixing an appropriate amount of security.

---

[104] *See* Vringo Pet. for Confidentiality [DI 55-1]; ZTE Req. for Not Being Heard in Public [DI 57-1].

*Conclusion*

For the foregoing reasons, Vringo's motion for a preliminary injunction is granted in part and denied in part.  Accordingly, pending the final determination of this action, defendants, and all of their subsidiaries, officers, agents, servants and employees and those persons in active concert or participation with any of them who receive actual notice of this order , shall not use, reference, or disclose any Confidential Information, as defined in Paragraph 2 of the Non-Disclosure Agreement entered into between ZTE and Vringo, Inc., dated December 6, 2013, in any manner inconsistent with the terms of that Non-Disclosure Agreement.  This includes, but is not limited to, any use, reference, or disclosure of any information provided by Vringo pursuant to the Non-Disclosure Agreement, including the December 10, 2013 presentation, in any existing or future judicial proceeding.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

Dated:        June 3, 2015
Issued at:    1:03 p.m.


                              /s/ Lewis A. Kaplan
                    _____
                                Lewis A. Kaplan
                          United States District Judge